_____

No. 95-3606
_____

United States of America,          *
                                    *
              Appellee,             *
                                    *
      v.                            *
                                    * Appeal from the United States
Anthony L. Johnigan, also           * District Court for the
known as Ricky Andre Johnigan,      * Western District of Missouri
also known as Randy McIntosh,       *
also known as Anthony Lamont        *
Johnigan,                           *
                                    *
              Appellant.            *

_____

Submitted:  March 12, 1996

Filed:  July 24, 1996
_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Anthony L. Johnigan appeals from a final judgment entered in the United States District Court for the Western District of Missouri[1] upon a plea of guilty entered on November 28, 1994, to one count of possession with intent to distribute 50 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Johnigan was sentenced to 360 months in prison, five years of supervised release, and a special assessment of $50.00. United States v. Johnigan, No. 4:94-00024-1 (W.D. Mo. Oct. 6, 1995) (judgment). For reversal, Johnigan argues that the

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

district court (1) erred in denying his motion to suppress evidence; (2) clearly erred in finding that he had not accepted responsibility for purposes of applying U.S.S.G. § 3E1.1; and (3) erred in denying his motion for a downward departure based upon substantial assistance under U.S.S.G. § 5K1.1.  For the reasons discussed below, we affirm.

**Background**

The underlying facts are summarized as follows.  In January 1994, the manager of the Courtyard Marriott Hotel in Kansas City, Missouri, reported to the police what appeared to be suspicious activity involving one of the hotel guests, registered under the name of Anthony Johnigan, with a home address in Hercules, California.  The manager reported, for example, that Johnigan carried very large sums of cash on him, paid for his room in cash on a daily basis, and made numerous telephone calls to various numbers in California and the inner city area of Kansas City.  The police checked those telephone numbers and determined that several of them corresponded with individuals who had been charged with narcotics violations.  The police checked the records for "Anthony Johnigan" and found that he had a conviction for possession of crack, an outstanding warrant for his arrest for violating his parole, and three outstanding arrest warrants for traffic violations in Kansas City.

On January 24, 1994, upon learning that Johnigan had inquired about transportation from the hotel to the Kansas City airport, the police surveilled the hotel courtesy van and observed Johnigan leaving the hotel with an unknown female.  At the airport, Johnigan purchased a ticket with cash, and then he and his female companion proceeded toward the gate area.  At that time, two law enforcement officers approached them.  The female, who identified herself as Jody Brewer, had identification in that name, and the ticket was issued to the same name.  She gave the officers permission to

-2-

search her two carry-on bags, in which no contraband was found.  She then walked away.  Meanwhile, one of the officers had asked to speak with Johnigan separately, and he complied.  When asked for his name, Johnigan initially identified himself as Randy McIntosh.[2]  However, after the officer indicated that Brewer had identified him as Anthony, he admitted his real name was Anthony Johnigan.  Johnigan was placed under arrest pursuant to the outstanding warrants against him, and he was given a <u>Miranda</u> warning.  The officers conducted a pat-down search of Johnigan and found $3,666.00 in cash and Johnigan's hotel room key.  When asked for permission to search the hotel room, Johnigan told the officers to get a search warrant.

The police secured the hotel room while one of the law enforcement officers applied for a search warrant from a state court judge.  After the officer had prepared his affidavit in support of the warrant application, but before the state court judge ruled on the application, a women representing herself as Johnigan's mother attempted to gain access to Johnigan's hotel room, purportedly to recover Johnigan's personal items.  This information was orally conveyed to the state court judge.  That same day, the state court judge issued a warrant for the search of Johnigan's hotel room.  Law enforcement officers executed the search warrant and found, among other things, three plastic baggies containing a tan, rock-like substance (later analyzed to contain cocaine base) in the hotel room.

The next day, January 25, 1994, a criminal complaint was filed charging Johnigan with possession with the intent to distribute 50 grams or more of a substance containing cocaine base.  On February 24, 1994, a federal grand jury in the Western District of

---

[2]A check of local records showed that a "Randy McIntosh" had an arrest for a narcotics violation, disposition unknown.

Missouri indicted Johnigan on the same charge. Johnigan initially entered a plea of not guilty.

On April 28, 1994, Johnigan changed his plea from not guilty to guilty. He entered his guilty plea in the district court based upon a written plea agreement with the government. The plea agreement stated, among other things:

> "Substantial assistance" within the meaning of Sentencing Guidelines § 5K1.1 has been provided by the defendant. The government shall file a motion prior to sentencing in this case requesting the Court to reduce the sentence defendant would otherwise receive under Sentencing Guidelines § 5K1.1. The government reserves the right to request a reduction generally or a specific sentence or sentence reduction.

Brief for Appellant, Addendum at 12 (Plea Agreement ¶ 9). Another paragraph of the plea agreement stated:

> The parties agree under § 3E1.1(b) of the Sentencing Guidelines that a three-point reduction for acceptance of responsibility is appropriate based on [Johnigan's] timely notice of [his] intent to plead guilty and timely providing information to the government concerning his involvement in this matter.

Id. at 10-11 (Plea Agreement ¶ 7). The plea agreement also provided "[i]f defendant fails to keep any promise in this agreement, the government, at its option, may: . . . void the entire agreement and reinstate the original charges." Id. at 13 (Plea Agreement ¶ 11).

Approximately one month after Johnigan's April 28, 1994, plea hearing, his appointed attorney from the Federal Public Defender's Office was relieved at Johnigan's request, and new counsel was appointed. Johnigan subsequently asked for permission to withdraw his guilty plea, and permission was granted. The district court judge who had presided at Johnigan's change of plea hearing then

recused himself from the case, and the cause was reassigned to another judge.

On November 28, 1994, the date on which Johnigan's jury trial was scheduled to begin, Johnigan, through his newly appointed attorney, filed a motion to suppress evidence and informed the district court of his desire to again change his plea from not guilty to guilty. At that point, no new plea agreement had been entered into between Johnigan and the government. A second change of plea hearing was held, at which Johnigan himself specifically acknowledged to the district court that the prior plea agreement, including the provisions related to acceptance of responsibility and substantial assistance, was no longer enforceable against the government. Tr. of Change of Plea Hearing (Nov. 28, 1994) at 12-15. The district court accepted Johnigan's guilty plea, conditioned upon the court's consideration of Johnigan's motion to suppress.

Initially, a magistrate judge considered Johnigan's motion to suppress. Following an evidentiary hearing, the magistrate judge recommended that the motion be denied. United States v. Johnigan, slip op. at 12 (May 24, 1995) (magistrate judge's report and recommendation) (hereinafter "Report and Recommendation"). The district court fully adopted the magistrate judge's findings of fact and conclusions of law and denied Johnigan's motion. Id. (June 8, 1995).

Upon receiving the probation officer's preliminary presentence investigation report (PSR), Johnigan objected to its failure to include a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. The government opposed Johnigan's objection. At sentencing, the district court declined to find that Johnigan had accepted responsibility within the meaning of § 3E1.1. Johnigan also moved pursuant to U.S.S.G. § 5K1.1 for a downward departure based upon substantial assistance. Johnigan argued that

the government had acted irrationally in withholding a § 5K1.1 motion. The district court declined to depart and, consistent with the recommendation in the PSR, concluded that Johnigan had a total offense level of 37, criminal history category of VI (including a career offender enhancement), and a guidelines range of 360 months to life. The district court sentenced Johnigan to the minimum sentence under the guidelines, 360 months,[3] plus five years of supervised release and a special assessment of $50.00. Johnigan appealed.

## Discussion

Denial of motion to suppress evidence

Johnigan argues that the district court erred in denying his motion to suppress evidence. Specifically, he maintains that the items seized upon execution of the search warrant, the statements he made at the airport, and the cash found on his person after his arrest at the airport should all be suppressed as fruits of an illegal investigatory stop which was not based upon a reasonable and articulable suspicion of criminal activity, as required by Terry v. Ohio, 392 U.S. 1 (1968) (Terry). Johnigan argues that, although the airport stop initially may have been consensual, it became nonconsensual once the officers displayed their badges, identified themselves as police officers, separated him from Brewer, and then -- by their actions and words -- effectively restrained him without informing him of his right to leave or immediately giving him a Miranda warning. He further argues that

---

[3]By contrast, in connection with the plea agreement, the government had been prepared to recommend a sentence of ten years based upon Johnigan's substantial assistance. See Tr. of Change of Plea Hearing (Apr. 28, 1994) at 24.

the airport stop was pretextual.[4]  He contends that the officers stopped him because they were really looking for an opportunity to find drugs on his person, *not* because he had outstanding arrest warrants; if the real reason for the stop was his outstanding arrest warrants, he argues, the officers could have arrested him at the hotel instead of waiting until he was in the airport, appearing ready to leave the Kansas City area.

The Supreme Court has recently clarified that "as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."  Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996).  However, the Court further stated that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Id.

> A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise a police officer views the facts through the lens of his [or her] police experience and expertise.  The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.

---

[4]The government responds by arguing that "pretext" is ordinarily an argument used in traffic stop cases.  In any event, the government correctly points out, the airport stop in the present case could not have been unlawfully pretextual because the officers were legally authorized to stop Johnigan based on their belief that he had outstanding arrest warrants.  Brief for Appellee at 27 (quoting United States v. Hamby, 59 F.3d 99, 100 (8th Cir. 1995) ("'If the officer is legally authorized to stop the driver, any additional "underlying intent or motivation" does not invalidate the stop.'" (quoting United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1970 (1995)))); accord Whren v. United States, 116 S. Ct. 1769, 1774 (1996) (constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved).

Id.

In the present case, we review the magistrate judge's findings of fact and conclusions of law regarding Johnigan's motion to suppress, as they were adopted in their entirety by the district court. Following an evidentiary hearing, the magistrate judge first found that the encounter between the officers and Johnigan at the airport was "a purely consensual encounter based upon the Defendant Johnigan's expressed agreement to speak with [one of the officers]." Report and Recommendation, slip op. at 9-10. In any event, the magistrate judge concluded, even if an investigatory stop did take place, the officers had a reasonable suspicion that the individual they stopped at the airport was wanted in connection with a felony because they were aware that a person by the name of Anthony Johnigan (the name he had used at the hotel) had outstanding arrest warrants in California and Kansas City. Id. at 10 (citing United States v. Hensley, 469 U.S. 221, 229 (1985) ("if police have a reasonable suspicion, founded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion")). The magistrate judge also found that the scope of the detention was not unconstitutionally broad because the officers used the least intrusive means reasonably available to achieve their goal of ascertaining Johnigan's true identity, after which they immediately arrested him pursuant to his outstanding warrants. Id. at 10-11 (citing Florida v. Royer, 460 U.S. 491, 500 (1983) ("the investigatory methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time")). As to Johnigan's statements made prior to his arrest, the magistrate judge found that the officers did not compel him to answer their questions. Id. at 11. The magistrate judge further determined that the search of his person, which produced a large sum of cash, was a lawful search incident to Johnigan's arrest. Id. (citing United States v. Horne, 4 F.3d 579,

586 (8th Cir. 1993) ("[p]olice may conduct a warrantless search incident to a lawful arrest, even absent probable cause or reasonable articulable suspicion"), cert. denied, 114 S. Ct. 1121 (1994)).  Finally, the magistrate judge concluded that, because the officers acted lawfully in stopping and questioning Johnigan, arresting him, and seizing his cash, there was probable cause for the state court judge to issue the warrant to search Johnigan's hotel room.  Id. at 11-12.

Upon de novo review, giving due weight to the magistrate judge's historical findings and inferences, we agree with the ultimate conclusions that: at the time of the airport stop, the officers reasonably suspected Johnigan of having engaged in felonious conduct; the officers did not exceed their authority in questioning, arresting, and searching Johnigan; and the issuance of the search warrant for the hotel room was supported by probable cause.[5]  Moreover, contrary to Johnigan's other arguments, the officers were not required to give Johnigan a Miranda warning at the time they were questioning him prior to his arrest.  United States v. McGauley, 786 F.2d 888, 890 (8th Cir. 1986) ("[n]o Miranda warning is necessary for persons detained for a Terry stop").  Nor were the officers required, upon learning of Johnigan's outstanding arrest warrants, to arrest him immediately while he was still at the hotel, rather than at the airport.  Hoffa v. United States, 385 U.S. 293, 310 (1966) (there is no constitutional right to be arrested and there is no requirement that law enforcement officers must effectuate an arrest immediately upon establishing probable cause).  Thus, we hold that the district court did not err in denying Johnigan's motion to suppress.

---

[5]Because we hold that there was probable cause for the search, we need not address the applicability of the good faith exception to the exclusionary rule, see United States v. Leon, 468 U.S. 897 (1984), raised by both Johnigan and the government on appeal.

<u>Denial of downward adjustment for acceptance of responsibility</u>

Johnigan also argues that the district court committed clear error in failing to find that he "clearly demonstrat[ed] acceptance of responsibility for his offense" and in failing to additionally find that he "timely provid[ed] complete information to the government concerning his own involvement in the offense." U.S.S.G. § 3E1.1.[6] Thus, he argues that he should have received a two-level downward adjustment for acceptance of responsibility, under § 3E1.1(a), and an additional one-level downward adjustment for providing complete information, under § 3E1.1(b)(1). Johnigan concedes that the paragraph in the plea agreement, referring to his acceptance of responsibility, was advisory and, in any case -- as he acknowledged at his change of plea hearing on November 28, 1994 -- he could no longer enforce the plea agreement once he withdrew his first guilty plea. He also concedes that the district court's finding regarding his acceptance of responsibility is

---

[6]U.S.S.G. § 3E1.1 provides in pertinent part:

(a)   If the defendant clearly demonstrates acceptance of responsibility for his [or her] offense, decrease the offense level by **2** levels.

(b)   If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his [or her] own misconduct by taking one of the following steps:

   (1)   timely providing complete information to the government concerning his [or her] own involvement in the offense;

   . . . .

decrease the offense level by **1** additional level.

-10-

entitled to great deference on review. Nevertheless, he argues, a finding of clear error is justified in the present case because he twice admitted his guilt and, prior to his first guilty plea, he provided timely information about his involvement in the underlying offense and even helped to arrange a drug transaction in California. In support of his position, Johnigan also cites the commentary to the guidelines, which indicates that, in rare situations, a defendant may be deemed to have accepted responsibility if, for example, the defendant admits the factual allegations underlying the charge but pursues a trial in order to challenge the constitutionality of a statute or the application of a statute to the admitted conduct. U.S.S.G. § 3E1.1, comment. (n.2). Johnigan argues that his circumstances are analogous to the example cited in the commentary because he withdrew his first guilty plea only to preserve his Fourth Amendment challenge to the airport stop and the subsequent hotel room search -- a challenge which Johnigan claims his first appointed attorney failed to consider despite his repeated requests. Brief for Appellant at 17 (citing Tr. of Change of Plea Hearing (Nov. 28, 1994) at 33-35; Tr. of Sentencing (Oct. 6, 1995) at 26-28). Johnigan also relies on the dissenting opinion in United States v. Passmore, 984 F.2d 933, 940 (8th Cir. 1993) (McMillian, J., dissenting), expressing the view that, where the defendant initially started to withdraw his guilty plea but then changed his mind and, consequently, the presentence investigation report recommended both an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility, it was appropriate to remand for resentencing with directions that the district court state its reasons for denying the defendant a downward adjustment for acceptance of responsibility.

On appeal, we review for clear error the district court's finding that Johnigan had not accepted responsibility within the meaning of U.S.S.G. § 3E1.1. United States v. Furlow, 980 F.2d 476, 478 (8th Cir. 1992) (en banc), cert. denied, 508 U.S. 914

(1993).  In the present case, the district court observed at Johnigan's sentencing hearing that there was scant support for Johnigan's acceptance of responsibility argument "other than the fact that he pled guilty and obviated the need for trial, though not entirely because we have gone . . . at least once through the pro[cess] of impaneling a jury to try the case."  Tr. of Sentencing (Oct. 6, 1995) at 25.  Thus, the district court declined to give Johnigan a downward adjustment for acceptance of responsibility.

"[W]hether a defendant has accepted responsibility is a factual question which depends largely on credibility assessments by the sentencing court."  United States v. Flores, 959 F.2d 83, 87 (8th Cir.), cert. denied, 506 U.S. 976 (1992).  "A sentencing judge is in a unique position to assess the appropriateness of an adjustment for acceptance of responsibility. This determination is entitled to great deference . . . and should not be disturbed unless it is without foundation."  Id. at 88 (citations omitted). We hold, in the present case, that there was ample support for the district court's finding.  See, e.g., Tr. of Change of Plea Hearing (Nov. 28, 1994) at 24 (where Johnigan, at his second change of plea hearing, stated on the record: "The reason why I got arrested, I was a black male in a hotel doing nothing illegal with my girlfriend, and I don't see what's wrong with that. . . . They didn't catch me.  If it was mine, I tell you I would never have left it in the hotel.  My fingerprints would have been all over the place.").[7]  Moreover, information contained in the PSR regarding statements made by Johnigan to the probation officer supports the district court's conclusion that Johnigan did not genuinely accept

_____

[7]After Johnigan made this statement, the district court directed defense counsel to inquire further, at which point Johnigan then admitted the factual basis of the charge to which he was pleading guilty.  Tr. of Change of Plea Hearing (Nov. 28, 1994) at 25-28.

responsibility for his acts.  We therefore hold that the district court's finding was not clearly erroneous.[8]

Denial of downward departure based upon substantial assistance

Lastly, Johnigan argues that the district court erred in denying his motion for a downward departure pursuant to U.S.S.G. § 5K1.1.[9]  Ordinarily, the district court lacks authority to depart downward pursuant to § 5K1.1 absent a government motion.  United States v. Kelly, 18 F.3d 612, 617 (8th Cir. 1994).  However, there are exceptions to this general rule.  See Wade v. United States, 504 U.S. 181, 185-86 (1992) (federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if the government's refusal was based on an unconstitutional motive or was not rationally related to any legitimate government end); Kelly, 18 F.3d at 617-18 (exceptions to the general rule are permitted where the defendant shows that the government's refusal to bring a motion was based on an unconstitutional motive or was irrational, or that the motion was withheld in bad faith).

In the present case, Johnigan maintains that, by directing the district court's attention to Paragraph 9 of the plea agreement at the sentencing hearing, he sufficiently demonstrated to the district court the irrationality of the government's refusal to

_____

[8]In its brief on appeal, the government relies on a letter Johnigan allegedly wrote to the district court judge who had accepted his first guilty plea.  In that letter, Johnigan allegedly claimed he was innocent.  No such letter appears in the record on appeal, however, and we therefore do not consider it.

[9]U.S.S.G. § 5K1.1 provides in pertinent part:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

-13-

bring a § 5K1.1 motion.  See Tr. of Sentencing (Oct. 6, 1995) at 17 (defense counsel's reference to statement in the plea agreement that cooperation had been provided).  Johnigan suggests that, notwithstanding the unenforceability of the plea agreement, that document proved to the district court that "'[s]ubstantial assistance' within the meaning of Sentencing Guidelines § 5K1.1 ha[d] been provided by the defendant."  Brief for Appellant, Addendum at 12 (Plea Agreement ¶ 9).  Moreover, he asserts in this appeal, at the first change of plea hearing, the prosecutor stated "I told Mr. Johnigan that based on his endeavor to provide us assistance, and assistance thereafter provided, that I would recommend a sentence of ten years in this case" and later stated "with the assistance that he has provided to the Government, with respect to others engaged in narcotic trafficking, it is my intent to file a 5K1 motion to allow the Court to depart below the Sentencing Guideline range."  Tr. of Change of Plea Hearing (Apr. 28, 1994), at 23-24, 26.  Johnigan now maintains that these statements made by the prosecutor belie her later claims at the sentencing hearing that the assistance he had provided was unreliable and of negative value.  See Tr. of Sentencing (Oct. 6, 1995) at 22-23.  Thus, Johnigan argues, because he *did* provide substantial assistance to the government, from which the government benefited, it was irrational for the prosecutor not to move for a downward departure.

In Wade, the Supreme Court held that

a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing.  Nor would additional but generalized allegations of improper motive. . . .  [A] defendant has no right to discovery or an evidentiary hearing unless he [or she] makes a "substantial threshold showing."

504 U.S. at 186 (citations omitted).  Following Wade, this court explained "a prosecutor's discretionary decision may be challenged

-14-

only if the defendant makes a 'substantial threshold showing' of prosecutorial discrimination or irrational conduct." United States v. Romsey, 975 F.2d 556, 557-58 (8th Cir. 1992); accord United States v. Lewis, 3 F.3d 252, 255 (8th Cir. 1993) (per curiam) ("[a] prosecutor's refusal to file a substantial-assistance motion is reviewable only when the defendant makes a substantial threshold showing that the refusal was based on an unconstitutional motive or that the refusal was irrational"), cert. denied, 114 S. Ct. 2111 (1994).

Johnigan raised the issue of a downward departure based upon substantial assistance at the sentencing hearing. Brief for Appellant at 9, 27 (citing Tr. of Sentencing (Oct. 6, 1995) at 15-18). At that time, the written statement in the plea agreement acknowledging Johnigan's cooperation was brought to the district court's attention, but the oral statements made by the prosecutor at the first change of plea hearing were not.[1] Upon consideration of this issue, the district court judge noted that, although he understood why Johnigan felt entitled to a departure based upon the plea agreement, that agreement had been nullified as a result of Johnigan's withdrawal of his first guilty plea. Tr. of Sentencing (Oct. 6, 1995) at 24. We hold that, under the facts of the present case, the district court acted appropriately in disregarding the plea agreement. The district court also noted that the government had expressed the view that the assistance provided by Johnigan turned out to be unreliable. Id. Indeed, contrary to Johnigan's claim that his assistance had been beneficial to the government, the government specifically described his assistance as having negative value. Therefore, upon review, we conclude that Johnigan did not make a substantial threshold showing to the district court that the government's ground for withholding a § 5K1.1 motion was

---

[1]Notably, the district court judge who presided at the sentencing hearing was not the judge who had presided at the April 28, 1994, change of plea hearing.

not rationally related to any legitimate government end.  Accordingly, we hold that the district court properly denied Johnigan's motion for a downward departure.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.