**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1074
_____

United States of America,   *
                            *
            Appellee,       *
                            *
       v.                   *
                            *
Roderick S. Pipes,          *
                            *
            Appellant.      *


_____          Appeals   from   the   United
States
    No. 97-1493                  District Court for the
_____                        District    of
Nebraska.

United States of America,   *
                            *
            Appellee,       *
                            *
       v.                   *
                            *
LaSalle N. Waldrip,         *
                            *
            Appellant.      *

_____

Submitted:  June 10, 1997

Filed:  September 11, 1997

_____

Before MURPHY and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.

_____

HEANEY, Circuit Judge.

Roderick S. Pipes and LaSalle N. Waldrip appeal from their convictions for possession of cocaine base with intent to distribute, arguing that the search of their rental car violated the Fourth Amendment. Additionally, Pipes challenges the district court's finding that he failed to make a threshold showing that the government acted irrationally in refusing to file a motion for downward departure for substantial assistance under section 5K1.1 of the United States Sentencing Guidelines (U.S.S.G.) and 18 U.S.C. § 3553(e). We affirm the district court on the Fourth Amendment issue. We reverse Pipes' sentence, however, and remand for an evidentiary hearing to determine whether the government acted irrationally in failing to request the downward departure.

I.

A.   Motion to Suppress

In April, 1995, Nebraska State Patrol Trooper Jeffrey Ward received a teletype message from the Utah State Patrol that described two vehicles, stated that the occupants had "known gang associations," and advised law

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

enforcement to "investigate transportation controlled substance" and "make own case." Assisted by a computer program, Ward estimated when the vehicles would arrive in Nebraska and began a careful watch for them. At the suppression hearing, Ward admitted that his

plan if he saw the two vehicles was to keep them in his view until he had an opportunity to stop them.

Early the next morning, Ward saw two vehicles that matched the descriptions in the teletype. He verified by radar that the lead car was speeding and observed that the other car was following at a constant speed. Lancaster County Deputy Sheriff James Baird responded to Ward's call for assistance to stop the cars. Ward informed Baird that the two vehicles had been clocked for speeding and that he had seen a teletype regarding possible narcotics trafficking. Ward stated that he would pull over the lead car and instructed Baird to cover the other vehicle, which was occupied by Pipes and Waldrip. Baird activated his lights and sirens and shined his spotlight into the car. Pipes and Waldrip raised their hands and shrugged their shoulders, but did not stop. Baird observed Waldrip lean out the passenger side window and throw four bags containing a white substance Baird believed to be narcotics. Nearly a half mile later, Pipes and Waldrip pulled over. After the passengers exited the car, Baird saw a bag containing what proved to be crack cocaine on the driver's console and a piece of rock cocaine on the floorboard in front of the passenger seat.

A grand jury indicted Pipes and Waldrip for possession with intent to distribute fifty grams or more of a substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1). Pipes and Waldrip filed a motion to suppress the evidence, arguing that the stop of their car was pretextual and thus unreasonable. The district court denied the motion. Pipes and Waldrip conditionally

4

pleaded guilty to the charges, preserving their right to appeal the district court's denial of their suppression motion.

On appeal, Pipes and Waldrip argue that the stop and subsequent search of their car violated their rights under the Fourth Amendment. They contend that Baird lacked probable cause to stop them for speeding and that, in any event, he used the traffic violation as a pretext to search the vehicle for drugs. While Pipes and Waldrip attempt to challenge the basis for the traffic stop, the district court's findings support that Baird

lawfully stopped the car for speeding, and we have no basis to disagree with that conclusion. We also agree with Pipes and Waldrip, however, that the officers' actual motive in stopping the vehicle was to investigate possible drug trafficking. Ward candidly admitted that he was following the teletype's instruction to "make own case" and that he intended to follow the two cars until he had a reason to stop them. Nonetheless, our court and the Supreme Court have made clear that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 135 L. Ed.2d 89, 98 (1996); see, e.g., United States v. Caldwell, 97 F.3d 1063, 1067 (8th Cir. 1996). This court has made clear that "any traffic violation, even a minor one, gives an officer probable cause to stop the violator. If the officer has probable cause to stop the violator, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996). Of course, officers must not selectively enforce the law based on unconstitutional considerations, but such claims fall under the Equal Protection Clause, not the Fourth Amendment. See Whren, 135 L. Ed. 2d at 98. Officer Baird attempted to stop the vehicle based on the information he received from Ward that the vehicle had been speeding. The vehicle initially did not stop. While following the vehicle, Baird saw one of the passengers throw what he believed to be narcotics out of the window. After the car stopped, he saw the crack cocaine on the driver's console and the floorboard. We thus agree with the district court that, under Whren, Baird's actions did not violate Pipes' and Waldrip's Fourth Amendment rights.

B.    Motion to Compel

     Pipes argues that the district court erred in failing to compel the government to move for a downward departure for substantial assistance under section 5K1.1 of the sentencing guidelines and 18 U.S.C. § 3553(e).    In support of Pipes' motion before the district court, his attorney filed an affidavit outlining the events following Pipes' arrest and indictment.  In January 1996, Pipes entered into a plea agreement, which provided in part that he would "truthfully disclose all information regarding [his] activities and

those of others" and that "any cooperation provided by [him] will be considered by the government" for a downward departure.  At the time of the agreement, the government knew that Pipes' role in the drug-trafficking offense was minor and that any information he did have would likely be limited.  In addition to the written plea agreement, a federal prosecutor later assured Pipes that if he provided helpful information, the government would make a downward departure motion on his behalf.

Pipes gave the Nebraska State Patrol a proffer agreement regarding his knowledge of illegal activities within Nebraska.  He later met with an FBI agent in Kansas who was investigating the driver of the lead car, Akale Green, for controlled substance violations in the Western District of Oklahoma.  Pipes identified Green in a photo lineup and identified others as possibly related to the drug operation.  The FBI agent stated that Pipes was very cooperative in answering all of his questions, that the information appeared truthful and accurate as it corroborated other evidence, and that the information would be helpful in the case against Green.

A grand jury indicted Green in Oklahoma.  Leslie Maye, the United States Attorney assigned to Green's case, requested that Pipes' sentencing be postponed to give Pipes an incentive to testify at Green's trial. Shortly thereafter, Green entered into a plea agreement and Pipes' testimony became unnecessary.  In September 1996, Maye wrote the United States Attorney's office in Nebraska that the Oklahoma office could not support a motion for downward departure on behalf of Pipes because, "based on the totality of the investigation," they had

8

determined that "the information was not completely correct and Waldrip and Pipes were not being altogether truthful and forthcoming in their debriefing." (Letter from Maye to Rothrock of 9/24/96.)

Based on the letter from the Oklahoma office, the government refused to move for a downward departure on behalf of Pipes. Pipes moved to compel the government to file the motion and sought an evidentiary hearing to demonstrate that the prosecutor's refusal was irrational. The district court denied both motions.

As the district court correctly stated, the government's refusal to file a substantial-assistance motion is reviewable only when the defendant makes a substantial threshold showing that the refusal was irrational or based on an unconstitutional motive. See Wade v. United States, 504 U.S. 181, 185-87 (1992). The district court acknowledged that Pipes presented "some reliable information" to support his claim that the government acted irrationally. It concluded, however, that Pipes' showing was not sufficient to support an evidentiary hearing. We disagree.

Citing United States v. Nicolace, 90 F.3d 255, 259 (8th Cir. 1996) and United States v. Johnigan, 90 F.3d 1332, 1339 (8th Cir. 1996), the district court stated that the general statement of a prosecutor or law enforcement officer that a defendant was unbelievable or unreliable is normally a sufficient reason to deny a defense motion to compel the government to file a motion for downward departure. While we have no quarrel with that as a general principle, this case differs greatly from those cited by the district court. In Nicolace, the defendant's plea agreement did not include any provisions regarding cooperation. The FBI questioned the defendant's candor during their discussions with him, and nothing developed from the information the defendant provided to the government. 90 F.3d at 259. In Johnigan, although the defendant originally entered into a plea agreement, he later changed his plea to not guilty and the government "specifically described his assistance as having negative value." 90 F.3d at 1339.

In contrast, Pipes had a written cooperation agreement with the government, which was later strengthened by the oral assurances of a Nebraska prosecutor.  It is also undisputed that Pipes cooperated with the government and that this cooperation, at least in part, contributed to the government's case against Green.  Thus, Pipes' claim that he provided substantial assistance to the government is supported by more than his mere assertion:  an FBI agent so stated and Maye implicitly confirmed as much when she requested that Pipes' sentencing be postponed so that he could testify at Green's trial.  In September, Maye did an about-face, communicating to the Nebraska office

that Pipes' information was not completely correct and that he was not being altogether truthful. The Nebraska prosecutor then relied on this conclusory letter from Maye, the Oklahoma prosecutor, without questioning the basis of her office's drastic change in position, and refused to move for a downward departure. The district court was not able to question the Oklahoma prosecutor about the specifics underlying the decision as Maye was not before the court. Under these circumstances, particularly the lack of any concrete explanation for the Oklahoma prosecutor's decision, the district court should have conducted an evidentiary hearing to determine whether the Nebraska prosecutor's failure to file a downward-departure motion was irrational. Thus, we reverse Pipes' sentence and remand for an evidentiary hearing on the question of whether Pipes had, in fact, been untruthful in his dealings with the Oklahoma prosecutor.

## II.

Accordingly, we affirm Pipes' and Waldrip's drug convictions, but reverse the district court's denial of Pipes' motion to compel and remand for an evidentiary hearing consistent with this opinion.

MURPHY, Circuit Judge, concurring in part and dissenting in part.

I concur in the affirmance of appellants' drug convictions but respectfully dissent from the remand for an evidentiary hearing on the government's decision not to move for a downward departure for Pipes.

12

Pipes entered into a plea agreement with the government that promised him certain benefits in exchange for his plea of guilty. The agreement provided that "any cooperation provided by you will be considered by the government under sentencing guidelines § 5K1.1 and 18 U.S.C. § 3553(e)." This promise obligated the government to consider the nature and value of any cooperation, but it did not require a motion for

downward departure.  See United States v. Kelly, 18 F.3d 612, 617 (8th Cir. 1994).  Although Pipes now claims that the agreement was orally modified by a statement of a prosecutor on or before January 11, 1996, he testified at the change of plea hearing on January 18, 1996 that no promises had been made to him other than those included in the written agreement.  The district court did not err in concluding that the government was not obligated to move for a downward departure.  See United States v. Knight 96 F.3d 307, 309 (8th Cir. 1996).

In order to obtain an evidentiary hearing Pipes had the burden to make a substantial showing that the decision not to move for a downward departure was irrational or in bad faith.  See Wade v. United States, 504 U.S. 181, 187 (1992); Kelly, 18 F.3d at 617-18.  Pipes offered his affidavit stating that a prosecutor and an FBI agent in Oklahoma had told him that information he gave would be helpful in a case against Akale Green.  A responsive affidavit indicated that the Oklahoma prosecutor in charge of the Green investigation subsequently concluded that Pipes had not been fully truthful or forthcoming during the investigation.  She recommended against a downward departure, and the Nebraska prosecutor relied upon that recommendation in refusing to move for a departure. Pipes did not meet his burden of showing bad faith or irrational action by the government so the district court did not err in denying the request for an evidentiary hearing.  See Wade, 504 U.S. at 187; U.S. v. Johnigan, 90 F.3d 1332, 1339 (8th Cir. 1996).  For these reasons the district court did not err in denying Pipes' motion for an evidentiary hearing.

Accordingly, I would affirm the judgment in all respects.

14

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.