**STATE of Minnesota, Respondent,**

v.

**Stirling Michael HEATON, Appellant.**

No. A11–659.

Court of Appeals of Minnesota.

May 7, 2012.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Mark S. Rubin, St. Louis County Attorney, Duluth, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Jodie Lee Carlson, Assistant Public Defender, St. Paul, MN; and Bradley T. Smith, Special Assistant Public Defender, Dorsey & Whitney LLP, Minneapolis, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On appeal from his convictions of possession of a firearm by a felon and posses-

sion of methamphetamine, appellant argues that (a) his right to be free from warrantless searches was violated when his parole officer conducted a search of his apartment and (b) because he did not consent to the warrantless search, the district court erred by not suppressing evidence discovered during the search. Because a valid, warrantless search of a parolee's home may be conducted if the search was conducted pursuant to a valid parole condition and was supported by reasonable suspicion, we affirm.

## FACTS

On July 13, 2009, appellant was released from prison after his incarceration for unlawful possession of a firearm by a prohibited person; appellant was then placed on intensive supervised release. Before appellant's release, the parole officer assigned to supervise appellant familiarized himself with appellant's criminal history and prior contacts with law enforcement, including a previous parole-compliance search in 2006 that resulted in the discovery of a loaded pistol. Discovery of the firearm led to appellant's conviction. Appellant's release status was reduced on July 13, 2010, from intensive supervised release to supervised-release status. Appellant's conditions of release stated: "The offender will submit at any time to an unannounced visit and/or search of the offender's person, vehicle or premises by the agent/designee." There is no dispute that appellant signed the conditions of release.

On July 22, 2010, appellant was a passenger in a vehicle stopped by Carlton County law enforcement. Another occupant of the vehicle was arrested on an outstanding warrant. During the stop, appellant was searched, and officers found that he was carrying $3,000 in cash. Appellant told the officers that the cash came from the sale of his car, but he was unable

to provide documentation regarding the transaction. The next day, appellant's parole officer was informed by law enforcement about the traffic stop. Appellant also contacted the parole officer that day, as required by his parole-release conditions, and told him of the contact with law enforcement. The parole officer thought it "very odd" that appellant, with a modestly paying job, would carry $3,000 in cash with no documentation to explain the source of the income. Based on the discovery of the cash and the parole officer's knowledge of the 2006 search, the parole officer determined that "there was a strong possibility" that appellant's apartment contained contraband.

The parole officer, accompanied by three plain-clothes police officers, went to appellant's apartment and knocked on the door, but appellant was not there. The parole officer then went to the restaurant where appellant worked as a cook, but he was unable to speak with him because the restaurant was busy. The parole officer returned to appellant's apartment, where the officers remained, and waited for appellant to return. Around midnight, appellant was dropped off at home by a co-worker and found the parole officer and the police officers waiting for him in an alley behind his apartment. Appellant was handcuffed and searched, during which approximately $2,600 in cash was found on appellant, and appellant's apartment key was removed from his pocket. The parole officer then directed everyone to enter appellant's apartment and used appellant's key to unlock the front door of the apartment.

After entering the apartment, the parole officer—with all three police officers present—asked appellant about the traffic stop and the large amount of cash he had been carrying. Appellant told the parole officer that he had sold his car to a man from the Mille Lacs/Hinckley area and knew the

buyer's first name but not his last. Appellant could not provide a receipt or any other documentation regarding the sale. At this point, the parole officer explained his concerns about the stop and the cash appellant had been carrying and told appellant he wanted to conduct a compliance search of the apartment. The parole officer testified that he then asked appellant for consent to search the apartment. The parole officer further testified that appellant "was silent. He did not say no, he did not say yes." One of the officers escorted appellant to the bathroom and stayed with him for the duration of the search. During the search, a pistol wrapped in a bandana was found under the kitchen sink and suspected methamphetamine and drug paraphernalia were located on top of the kitchen cabinets. These items were seized and inventoried.

The state charged appellant with possession of a firearm by a felon, in violation of Minn.Stat. § 624.713, subd. 1 (Supp.2009), and two counts of second degree possession or sale of methamphetamine, in violation of Minn.Stat. § 152.022, subds. 1, 2 (2008). Appellant moved to suppress the evidence of the firearm and drugs, claiming that he did not consent to the search, that the parole officer who authorized and conducted the search lacked reasonable suspicion, and the search was pretextual. The district court denied appellant's motion to suppress, calling the decision "a very close case." The district court applied two distinct tests to its analysis of whether the agents conducted a valid search: the special-needs test under *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), and the-totality-of-the-circumstances test under *State v. Anderson,* 733 N.W.2d 128 (Minn.2007) (citing *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)). Under both, the district court determined that the search was supported by reason-

able suspicion and therefore valid. Appellant waived his right to a jury trial and agreed to a bench trial on stipulated facts. The district court found appellant guilty of the firearms offense and one count of possession of methamphetamine and sentenced him to concurrent executed prison terms of 60 months for the gun offense and 100 months for the drug offense. This appeal follows.

## ISSUE

Did the district court err by not suppressing evidence discovered during the warrantless search of appellant's residence on the ground that the officers lacked reasonable suspicion?

## ANALYSIS

■■■ A district court's ruling on constitutional questions involving searches and seizures is reviewed de novo. *Anderson,* 733 N.W.2d at 136. We review the district court's factual findings for clear error. *Id.* Appellant argues that the district court erred by denying his motion to suppress the evidence discovered during the warrantless search because his parole officer lacked reasonable suspicion of wrongdoing.

■■ An individual's right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. The Fourth Amendment is a personal right, the protection of which may be invoked by showing that a person "has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998). The Minnesota Supreme Court has held that probationers have a diminished expectation of privacy, and, accord-

ingly, their homes may be searched without a warrant as long as a valid condition of probation exists and authorities have reasonable suspicion of criminal conduct. *Anderson,* 733 N.W.2d at 139–40. But Minnesota courts have not addressed whether an appellant's status as a *parolee* similarly diminishes the expectation of privacy and likewise permits a warrantless search when police officers can establish reasonable suspicion or whether police officers need any suspicion at all.[1]

Respondent asserts that a suspicionless search of a parolee's home is permitted, relying on *Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). *Samson* and the instant case share factual similarities, but *Samson* differs substantively. In *Samson,* the applicable statute stated that a parolee "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846, 126 S.Ct. at 2196 (citing Cal.Penal Code Ann. § 3067(a) (West 2000)). The parole search condition imposed under Minnesota law states that "the offender shall submit at any time to an unannounced search of the offender's person, vehicle, or premises." Minn.Stat. § 244.14, subd. 4 (2008). Unlike the search condition recited in California law, appellant's search condition pursuant to Minnesota law contains no language explicitly eliminating suspicion or cause in connection with the search of a parolee. And although respondent suggests that the "at any time" language in Minn.Stat. § 244.14,

subd. 4, allows a suspicionless search, in our view, the "at any time" language merely provides a temporal condition, allowing a search at any point during the day, such as the search that occurred here shortly after midnight. Accordingly, *Samson's* authorization of a suspicionless search does not apply here.[2]

■ Therefore, as in *Anderson,* we begin by balancing the parolee's right to privacy against any legitimate government interests to determine if reasonable suspicion, rather than a warrant and probable cause, is required to search a parolee's home. *Anderson,* 733 N.W.2d at 140. In doing so, we note that appellant's expectation of privacy was diminished simply by his status as a parolee, just as a probationer's expectation of privacy is diminished by his status as a probationer. *Id.* at 139–40; *see also Samson,* 547 U.S. at 850, 126 S.Ct. at 2198 ("[P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment."). Additionally, it is undisputed that appellant signed the conditions of release, which stated that he would "submit at any time to an unannounced visit and/or search of the offender's person, vehicle or premises by the agent/designee." By agreeing to this condition of parole, appellant diminished his reasonable expectation of privacy. *Knights,* 534 U.S. at 119–20, 122 S.Ct. at 591–92; *Anderson,* 733 N.W.2d at 139. And, as with probationers, the state has a legitimate, substantial interest in ensuring that parolees abide by the terms of parole and "protecting potential victims from ille-

---

**1.** Appellant does not dispute the validity of his parole conditions.

**2.** The state's reliance on *State v. Bartylla,* 755 N.W.2d 8 (Minn.2008), is likewise unavailing. Citing *Samson, Bartylla* held that the warrantless, suspicionless collection of DNA as a result of a prior felony conviction did not vio-

late the Fourth Amendment. *Id.* at 17–19. Notably, *Bartylla* involved an incarcerated person rather than a conditional releasee. And nothing in *Bartylla* suggests that its holding is applicable to other, more intrusive suspicionless searches, such as the search of a home.

gal conduct" the parolee may commit. *Anderson,* 733 N.W.2d at 140; *see also Samson,* 547 U.S. at 844, 126 S.Ct. at 2195 ("A State has an 'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.'" (quotation omitted)). Accordingly, we hold that these legitimate government interests extend to parolees and probationers alike and conclude that the search of a parolee's home requires only reasonable suspicion. Therefore, a warrantless search of appellant's apartment was lawful if reasonable suspicion of criminal conduct can be established.

 Reasonable suspicion requires specific, articulable facts that, taken together with rational inferences from the facts, reasonably warrant the intrusion at issue. *State v. Davis,* 732 N.W.2d 173, 182 (Minn.2007). The showing required is not high, but it requires "more than an unarticulated hunch" and the ability of an officer "to point to something that objectively supports the suspicion at issue." *Id.* (quotation omitted). In determining whether reasonable suspicion exists, we weigh the totality of the circumstances, which may include otherwise innocent factors. *State v. Martinson,* 581 N.W.2d 846, 852 (Minn. 1998).

 The district court determined that the search of appellant's apartment was based on "more than an unarticulated hunch" and was therefore supported by reasonable suspicion. The district court identified four facts to support its determination: (1) the parole officer knew that appellant, as a parolee, had recently been placed on a reduced supervision status; (2) the parole officer knew that appellant possessed a significant amount of cash and had a "thin" explanation for why he possessed it; (3) the parole officer knew of appellant's limited financial means; and (4) the parole officer knew that, when stopped, appellant was with an individual who had an outstanding warrant.

Appellant argues that these four factors separately and collectively point to innocent behavior that cannot give rise to reasonable suspicion. But individual factors consistent with innocent behavior may, when taken together, amount to reasonable suspicion. *Id.* (citing *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (stating circumstances could arise where innocent factors together may justify suspicion that criminal activity was afoot)).

Appellant first argues that, absent other indications of wrongdoing, possessing a large amount of cash does not establish reasonable suspicion. Appellant contends that the two cases cited by the district court on the cash-possession factor, *United States v. Johnigan,* 90 F.3d 1332 (8th Cir. 1996) and *United States v. Stephenson,* 924 F.2d 753 (8th Cir.1991) are inapposite. In *Stephenson,* appellant argues, possession of cash was not the sole reason upon which the district court determined that reasonable suspicion existed. *Stephenson,* 924 F.2d at 759. Though true, this observation actually supports the district court's reasoning because the district court here, likewise, did not rely solely on the possession of cash to support its determination that the officers had reasonable suspicion for the search. In its order, the district court stated that "possessing a large quantity of cash without an adequate explanation, *in light of the surrounding circumstances,* is sufficient to establish reasonable suspicion." (Emphasis added.) Here, the surrounding circumstances included appellant's recent change in supervision status, his lack of documentation for the large amount of money he possessed, and his previous parole violation for possessing drugs and a firearm. Appellant is correct, however, that the district court's reliance

on *Johnigan* was misplaced because reasonable suspicion in *Johnigan* was based on the suspect's outstanding warrants, not the cash later found in a search incident to arrest. *Johnigan*, 90 F.3d at 1336. On its own, the possession of $3,000 may be an innocent circumstance, but when considered as part of the totality of the circumstances, it supports the district court's finding that the parole officer had reasonable suspicion for the warrantless search.

Second, appellant argues that his status as a parolee and his criminal history, on their own, do not give rise to reasonable suspicion. Specifically, appellant argues that all parolees have criminal records and to allow criminal history to be a basis for reasonable suspicion would result in unlimited warrantless searches in the homes of parolees. Appellant's argument has some merit, but this record persuades us that appellant's argument nevertheless fails. We note first that the district court's rationale was not based on appellant's criminal history per se. Rather, the district court supported its reasonable-suspicion determination based on the change in appellant's supervisory status, not his criminal history. And although the parole officer did rely on appellant's history regarding the 2006 search and his subsequent conviction, the parole officer's knowledge of appellant's 2006 parole violation was also information "that objectively supports" the parole officer's suspicion that criminal activity was afoot. *Davis,* 732 N.W.2d at 182.

Third, appellant argues that the fact that appellant was in the presence of an individual with an outstanding warrant, on its own, does not indicate that appellant was engaged in criminal activity. Appellant notes that suspicion must be particularized to the suspect and that association with a person previously engaged in criminal activity does not support reasonable

suspicion. *Anderson,* 733 N.W.2d at 138 (quotation omitted); *State v. Diede,* 795 N.W.2d 836, 844 (Minn.2011); *see also State v. Varnado,* 582 N.W.2d 886, 890 (Minn.1998) (holding that mere association with suspected drug dealer, including driving dealer's car, did not provide reasonable basis to suspect person may be armed and dangerous). Appellant asserts that, though his companion at the time of the stop in Carlton County had an outstanding warrant, there was no indication that appellant was engaged in criminal activity. Appellant's argument is persuasive because our supreme court has held that particularized suspicion of appellant's criminal activity is required. *State v. Martinson,* 581 N.W.2d at 850 (stating that reasonable suspicion requires "a particularized and objective basis for suspecting the person ... of criminal activity") (quotations omitted). But even discounting this factor, based on the totality of the circumstances, we conclude that the search was supported by reasonable suspicion.

Fourth, appellant argues that his limited financial means should not be used to support reasonable suspicion. Appellant provides no caselaw to support this argument. He simply asserts that he provided a plausible explanation for being in possession of the cash—the sale of his car—which was corroborated by the fact that his car was not parked at his home when officers arrived, and appellant was later dropped off by a coworker. But appellant neglects to mention that he could not provide the last name of the purchaser or verify the sale of the car with documentation of any kind. Appellant also asserts a policy argument, noting that if reasonable suspicion can be predicated upon limited financial means, many innocent people of limited means will be implicated. This argument again mistakenly presumes that appellant's limited means is viewed in isolation, when, in fact,

it is but one part of a totality-of-the-circumstances analysis.

We conclude that ample reasonable suspicion existed to conduct a search of appellant's home, given that the parole officer knew that appellant possessed a large amount of cash unsupported by documentation, even though he held a low-paying job, and had previously violated his parole by possessing drugs and a firearm. Because we conclude that reasonable suspicion existed to search appellant's apartment, we need not reach appellant's consent argument.

Appellant additionally argues that his right against warrantless searches was violated under the state constitution. Courts look to the state constitution as a basis for individual rights "with restraint and some delicacy," particularly when the right at stake is guaranteed by the same language in the federal constitution. *Bartylla,* 755 N.W.2d at 18; *Anderson,* 733 N.W.2d at 140 (quotation omitted). *Bartylla* and *Anderson* deemed the federal precedent on warrantless searches as adequate protection of the basic rights and liberties of state citizens and not a radical departure from Fourth Amendment precedent. *Bartylla,* 755 N.W.2d at 19; *Anderson,* 733 N.W.2d at 140. The same reasoning applies here, eliminating the need for a separate analysis under the state constitution.

## DECISION

Because appellant was a parolee when officers searched his home and the search was conducted pursuant to a condition of parole and supported by reasonable suspicion, the district court did not err when it refused to suppress the firearms, drugs, and drug paraphernalia that were seized in the search of appellant's home.

**Affirmed.**

ROSS, Judge (concurring specially).

I respectfully disagree with the majority's declaration that the reasonable suspicion standard applies to searches of parolees, and so I write separately, concurring only in the result. The United States Supreme Court's black-letter holding in *Samson v. California* seems to provide the unambiguous standard that we must apply to Heaton's Fourth Amendment challenge: "[W]e conclude that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." 547 U.S. 843, 857, 126 S.Ct. 2193, 2202, 165 L.Ed.2d 250 (2006). We should follow that holding.

I believe that two mistaken premises have led the majority to its mistaken conclusion that *Samson* does not apply to measure the constitutionality of the parolee search in this case.

The majority first mistakenly adopts the reasonable suspicion standard by assuming that *State v. Anderson,* 733 N.W.2d 128 (Minn.2007), is more factually similar to this case than *Samson.* I believe that the assumption is wrong. *Samson* involved the suspicionless search of a parolee who was on supervised release from prison while serving a sentence for possession of a firearm as a felon. 547 U.S. at 846, 126 S.Ct. at 2196. This case *identically* involves the suspicionless search of a parolee who was on supervised release from prison while serving a sentence for possession of a firearm as a felon. In contrast to these mirror-image cases, *Anderson* involved the search of a *probationer,* not a *parolee,* 733 N.W.2d at 131, and, as the *Samson* court explained, a parolee has less of an expectation of privacy for Fourth Amendment search purposes than does a probationer. *Samson,* 547 U.S. at 850, 126 S.Ct. at 2198 ("On this continuum, parolees have fewer expectations of privacy than probationers,

because parole is more akin to imprisonment.").

The majority's second mistake is that it renders significant what seems to be an insignificant difference between the parolee-release agreement in *Samson* and the similar agreement in this case. In *Samson*, the applicable parole agreement provided that the parolee was required "to be subject to search or seizure by a parole officer or other peace officer at any time . . . with or without a search warrant and with or without cause." 547 U.S. at 846, 126 S.Ct. at 2196 (quotation omitted). Similarly in this case, consistent with state statutory and administrative law, Heaton's parole agreement acknowledged that he "will submit at any time to an unannounced visit and/or search of [his] person, vehicle, or premises by the agent/designee."

It is true, as Heaton and the majority point out, that, unlike the parole agreement in *Samson*, Heaton's agreement here did not expressly include the words "with or without cause." But this is merely a semantic, not substantive, difference. The difference between having to "submit . . . to" an "unannounced search" occurring "any time" and having to be "subject to" a "search . . . with or without cause" occurring "at any time" is not constitutionally material; each provision delivers the same obliterating blow to any reasonable parolee's expectation of privacy. This is because each informs the parolee that he is subject to an unanticipated search at any time, and the suspicionless nature of that potential search is just as implicitly clear under the Minnesota language as it is explicitly clear under *Samson*'s California language. "Any time" means *any* time; and it cannot really be any time if it is limited only to those times when reasonable suspicion exists. The majority's statement that the term "merely provides a temporal condition" does not persuade me otherwise. A parolee leaving prison knows just what it means to be subject to an unannounced search anytime because he has been experiencing exactly that while incarcerated, and cause is not a prerequisite. We can be sure that no person leaving confinement would read into that term some restriction on police authority, as the majority does. I am convinced that Heaton had no reasonable expectation of privacy in any area he knew was searchable, unannounced, at *any* time.

The majority relies on these underlying mistakes and then contradicts the Supreme Court's Fourth Amendment holding in *Samson*, concluding instead that a warrantless "search of a parolee's home requires only reasonable suspicion" and that the search of Heaton's apartment therefore "was lawful if reasonable suspicion of criminal conduct can be established." I agree that reasonable suspicion exists here, as the majority ultimately concludes, but I disagree that reasonable suspicion is required. I would rely exclusively on that conclusion, or I would merely echo the clear and controlling precedent of *Samson*, restating that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee," and affirm on that ground.