IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 8, 2017 Session

## STATE OF TENNESSEE v. JANET MICHELLE STANFIELD, TONY ALAN WINSETT and JUSTIN BRADLEY STANFIELD

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Obion County**
**No. CC-15-CR-84        Jeff Parham, Judge**

_____

**No. W2015-02503-SC-R11-CD**

_____

SHARON G. LEE, J., dissenting in part and concurring in part in the judgment.

The warrantless search of the home of Tony Winsett, Janet Stanfield, and her son, Justin Stanfield, violated their rights under Article I, section 7 of the Tennessee constitution to be free from unreasonable searches and seizures. Mr. Winsett's parolee status should not subject him, Ms. Stanfield or Mr. Stanfield to a warrantless and suspicionless search. The trial court did not err in suppressing evidence from the illegal search of the Winsett/Stanfield home. The majority does not err in suppressing the evidence as to Mr. Stanfield, although I do not agree with the majority's reasoning.

With nothing more than the knowledge that Mr. Winsett was on parole and a tip from an informant that Mr. Winsett was using (or selling) methamphetamine and possibly injecting with needles, police officers entered the curtilage of the Winsett/Stanfield home. The officers, without a warrant, first searched a burn pile close to the home, finding plastic bags containing what appeared to be marijuana residue. They found neither methamphetamine nor needles. They began knocking on the front and back doors of the home and waited for an answer for ten to twenty minutes—even though there was no vehicle in the driveway. During this prolonged wait period, one of the officers went to the side of the house and listened at an open window. Again, with no search warrant. The officers heard a "running noise" inside the home and concluded someone was inside, actively destroying evidence. The officers failed to mention hearing this "running noise" in their post-search reports.

Fearing the destruction of evidence, the officers forcibly entered the home without a search warrant while Mr. Winsett, Ms. Stanfield, and Mr. Stanfield were away. Once

inside, the officers encountered a four-legged dog scampering about—perhaps excited by the door-knocking at both ends of the house—not a two-legged person destroying evidence. They searched the entire home without a search warrant and without exigent circumstances.

When police officers search a home without a warrant, the search is presumptively unreasonable under both the United States and Tennessee constitutions. *See State v. McCormick*, 494 S.W.3d 673, 679 (Tenn. 2016). The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee constitution guarantee this basic right. Evidence discovered in an unconstitutional search is not admissible into evidence. *State v. Turner*, 297 S.W.3d 155, 160 (Tenn. 2009) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)).

The majority notes that Mr. Winsett had agreed under his parole conditions to a warrantless search of his "person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time without reasonable suspicion." But this observation misses the mark. Mr. Winsett did not voluntarily agree to give up his constitutional rights; he had no choice but to sign this "agreement" to be released on parole. *See State v. Baldon*, 829 N.W.2d 785, 802–03 (Iowa 2013) (concluding that a "parole agreement containing a prospective search provision is insufficient evidence to establish consent" and "reveals an absence of bargaining power on behalf of the parolee, rendering contract principles inadequate to entitle the state to enforce compliance of a search provision"); *People v. Huntley*, 371 N.E.2d 794, 798 (N.Y. 1977) (holding that the parolee's signature of parole agreement "is not to be taken as an unrestricted consent to any and all searches whatsoever or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures"); *Scott v. Bd. of Prob. & Parole*, 698 A.2d 32, 36 (Pa. 1997) (holding parolee's right to be free from unreasonable searches and seizures was "unaffected by his signing of the consent to search provision").

In upholding the warrantless search of the Winsett/Stanfield home, the majority relies on its holding in *Turner* that law enforcement may search parolees, their homes, and their vehicles without reasonable or individualized suspicion. 297 S.W.3d at 169. I dissented in *Turner* because, under Tennessee's constitution, law enforcement should not have the right to search a parolee's home without a warrant and without reasonable suspicion.

Requiring law enforcement to have reasonable suspicion before conducting a warrantless search of a parolee "strikes a more appropriate balance between the individual's right to be free from unreasonable searches and the government's legitimate interest in preventing crime" than a blanket approval of searches based on parolee status alone. *Turner*, 297 S.W.3d at 170 (Lee, J., dissenting). Other courts agree that reasonable suspicion is necessary to justify a warrantless search. *See State v. Bennett,* 200 P.3d 455,

463 (Kan. 2009) (holding that "parolees in Kansas have an expectation that they will not be subjected to suspicionless searches"); *Commonwealth v. Moore*, 43 N.E.3d 294, 300 (Mass. 2016) (concluding that "reasonable suspicion, but not a warrant, was needed to justify a search of a parolee's home"); *State v. Heaton*, 812 N.W.2d 904, 909 (Minn. Ct. App. 2012) (concluding that "the search of a parolee's home requires only reasonable suspicion"); *Commonwealth v. Hughes*, 836 A.2d 893, 899 (Pa. 2003) ("A search is only reasonable where . . . (1) the parole officer had reasonable suspicion to believe that the parolee committed a parole violation; and (2) the search was reasonably related to the duty of the parole officer."); *State v. Kline*, 891 N.W.2d 780, 783 (S.D. 2017) ("Parole agents may search a parolee's residence if they have reasonable suspicion that the parolee has committed a crime."). "The suspicionless search is the very evil the Fourth Amendment was intended to stamp out." *Samson v. California*, 547 U.S. 843, 858 (2006) (Stevens, J., dissenting) (citing *Boyd v. United States*, 116 U.S. 616, 625–630 (1886)).

Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity" in the context of an investigatory stop. *State v. Davis*, 354 S.W.3d 718, 727 (Tenn. 2011) (quoting *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008)) (internal quotation marks omitted). Determining whether reasonable suspicion is supported by specific and articulable facts requires consideration of the totality of the circumstances established by the proof. *Davis*, 354 S.W.3d at 727 (internal citations omitted).

So the issue boils down to whether the police had a reasonable suspicion of criminal activity *before* searching the curtilage of the Winsett/Stanfield home and forcibly entering and searching the home while its residents were away. All the police had was knowledge that Mr. Winsett was on parole and an uncorroborated tip from a criminal informant that Mr. Winsett was either "using methamphetamine and possibly injecting with needles" or "selling ice meth and possibly using hypodermic needles"—depending on whether you rely on testimony given at the suppression hearing or the officers' incident reports. Are these two facts sufficient to satisfy a requirement for reasonable suspicion? I think not.

Here, the informant was from the "criminal milieu"; therefore, we do not presume the reliability of his tip to police. *See State v. Tuttle*, 515 S.W.3d 282, 301 (Tenn. 2017) (citing *State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006)). In evaluating the tip, we consider the totality of the circumstances, including the basis for the informant's knowledge and the reliability of the informant or the information. *Id.* (citing *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006)).

The police had limited experience with the criminal informant. He had previously supplied information that had led to a "case," but apparently had not, as of yet, led to a conviction. There is no evidence as to how "fresh" the tip was. The police did not recall the informant's basis of knowledge for the tip. In addition, there was no effort by the

police to corroborate the veracity of the informant's tip before conducting the search of the home's curtilage. Although the police do not have to corroborate every detail of a tip, "more than the corroboration of a few minor elements of the story is necessary." *State v. Moon*, 841 S.W.2d 336, 341 (Tenn. Crim. App. 1992) (quoting *United States v. Bush*, 647 F.2d 357, 363 (3rd Cir. 1981)).

In sum, based on the totality of the circumstances, the police lacked reasonable suspicion to search the curtilage of the Winsett/Stanfield home and then forcibly enter and search the home. Evidence found *during* a search cannot be used to justify the initial entry.

For these reasons, I would hold that the trial court did not err in suppressing evidence uncovered in this warrantless and suspicionless search as to Mr. Winsett, Ms. Stanfield, and Mr. Stanfield.

_____
SHARON G. LEE, JUSTICE