# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2432

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the District of Nebraska. |
| Daniel Franklin Lyton, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 21, 1998

Filed:  December 7, 1998

_____

Before WOLLMAN, ROSS and BEAM, Circuit Judges.

_____

ROSS, Circuit Judge.

Daniel Franklin Lyton appeals from a judgment of the district court[1] following his conditional guilty plea to possession with the intent to distribute cocaine, in violation of 21 U.S.C § 841(a)(1).  We affirm.

In the afternoon of June 28, 1997, after Nebraska State Trooper Wendy Brehm saw a pick-up truck following a camper too closely, she pulled the truck over to the side of the highway.  Nathaniel Turner was driving the truck and Lyton was the

_____

[1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

passenger. In response to Brehm's request, Turner gave her a California driver's license and a Michigan registration indicating the vehicle was registered to a Charles Laird. In response to questioning, Turner told Brehm that the truck belonged to Lyton and that they had been to Las Vegas, Nevada, to celebrate Lyton's birthday and were returning to Detroit, Michigan.

Brehm then questioned Lyton. He told her the truck belonged to his uncle and that he and Turner were going to stop in Las Vegas, but did not because they ran out of money. Brehm also asked if there were drugs or weapons in the truck. Lyton said no and invited Brehm to check the truck. Brehm then presented Lyton with a consent-to-search form, which he signed.

Looking underneath the truck, Brehm saw two gasoline tanks and what appeared to be tape on one of the tanks. Trooper Bruce Okamato, who had come to the scene, also looked underneath the truck and saw markings indicating the rear tank had been removed and replaced. After tapping on the tank, he believed it contained something other than fuel. Although the gas gauges showed both tanks were full, Okamato could start the truck using the front tank, but could not start it using the rear tank. Brehm then asked Turner to drive the truck and follow her to a garage so that the tanks could be inspected; he complied. Okamato drove Lyton to the garage, where the rear tank was removed and bags of cocaine and a gun were found inside.

After indictment, Lyton filed a motion to suppress, asserting that the stop and detention were illegal and his consent was involuntary. The government responded that Lyton did not have standing to contest the search of the truck because he failed to present evidence that he was using the truck with his uncle's permission. See United States v. Muhammad, 58 F.3d 353, 354 (8th Cir. 1995) (per curiam) (defendant lacked standing where he failed to present "some evidence of consent or permission from the lawful owner[] to give rise to an objectionably reasonable expectation of privacy"). Although the district court agreed that Lyton lacked standing to directly contest the

search, it held that he had standing to challenge the stop and detention, but rejected his arguments.

On appeal, Lyton argues that the district court erred in holding that he did not have standing to contest the search of the truck. We note that recently the Supreme Court has observed that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' " Minnesota v. Carter, 1998 WL 823045, at *3 (U.S. Dec. 1, 1998) (No. 97-1147) (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1978)). In any event, we need not decide whether Lyton had a reasonable expectation of privacy in the truck. Even if he did, he has not shown a violation of his rights. See United States v. Thomas, 83 F.3d 259, 260 (8th Cir. 1996). Moreover, as the district court noted, Lyton may challenge the stop and detention and argue that the evidence should be suppressed as fruits of illegal activity. See United States v. Portman, 857 F.2d 1221, 1222 (8th Cir. 1988) (passenger may contest legality of stop), cert. denied, 490 U.S. 1069 (1989).

We now turn to Lyton's arguments concerning his stop and detention. Lyton concedes that " 'any traffic violation, even a minor one, gives an officer probable cause to stop the violator.' " United States v. Pipes, 125 F.3d 638, 640 (8th Cir. 1997) (quoting United States v. Bell, 86 F.3d 820, 822 (8th Cir.), cert. denied, 117 S. Ct. 372 (1996)), cert. denied,118 S. Ct. 1202 (1998). Lyton also concedes that it is a violation of Nebraska law if a driver "follow[s] another vehicle more closely than is reasonable and prudent," Neb. Rev. Stat. § 60-6, 140 (Reissue 1993), but argues that Brehm's testimony that Turner was following too closely was not credible. However, the court credited Brehm's testimony and we defer to its finding. See United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998) (officer's "observation of [defendant] following a motor vehicle too closely provided probable cause" for stop).

We also reject Lyton's arguments that the detention was illegal. After stopping the truck for the traffic violation, Brehm properly asked questions reasonably related to the stop, including requests for identification and registration and questions relating to presence in the area, destination and purpose. Id. at 1134. In addition, because Turner and Lyton gave inconsistent stories, Brehm was entitled "to expand the scope of the stop and ask additional, more intrusive, questions." United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994), cert. denied, 514 U.S. 1134 (1995); see also United States v. Johnson, 58 F.3d 356, 358 (8th Cir.), cert. denied, 516 U.S. 936 (1995).

Lyton also argues that his consent to search was not voluntary. Because the stop and detention were lawful, his argument that the search was a product of an illegal stop and detention is without merit. Compare Ramos, 42 F.3d at 1163. We also reject Lyton's argument that his consent was involuntary because Brehm failed to inform him that he could refuse to allow a search. Although a suspect need not be informed of his right to refuse a request to search, see id. at 1164, the consent form advised Lyton that he had "the right to refuse to permit this search." Considering "the totality of the circumstances, including 'both the characteristics of the accused and the details of the interrogation,' " United States v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998) (quoting United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990)), the district court's finding that Lyton's consent was voluntary was not clearly erroneous. At the time of the consent, Lyton was twenty-six years old, had attended college, and was a convicted felon. In addition, he was questioned between five and ten minutes alongside a public highway in the afternoon with temperatures in the mid-80's.[2] In fact, "[w]hat happened here, really, went beyond voluntary consent." Ramos, 42 F.3d at 1164. Indeed, it was Lyton who invited Brehm to check the truck for guns and drugs. Thus,

_____

[2]Lyton argues that the environment was coercive because it was hot outside and he only gave his consent to get out of the heat. However, Brehm testified that Turner and Lyton sat in a patrol car for some of the time and that Lyton signed the consent form in the car.

"[i]t was an affirmative waiver of [Lyton's] Fourth Amendment right to prevent a search of [the] vehicle."  Id.[3]

Also, contrary to Lyton's argument, the search did not exceed the scope of his consent.  Lyton did not limit his consent or, even though he told a trooper he had to get back to Michigan, did not object to the search once it was underway.  See United States v. Coffman, 148 F.3d 952, 953 (8th Cir. 1998) (search under bed did not exceed scope of consent where defendant invited officers to "look around" and did not limit search to certain areas).

The judgment of the district court is affirmed.

A true copy.

      Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[3]Even if the stop or detention had been illegal, we would affirm the denial of the suppression motion because Lyton's consent would be " 'sufficiently an act of free will to purge the primary taint.' "  Ramos, 42 F.3d at 1164 (quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963)).

-5-