# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2911
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  District of South Dakota. |
| Randall E. Neumann, | * |
| | * |
| Appellant. | * |

_____

Submitted:  March 9, 1999

Filed:  July 2, 1999
_____

Before FAGG, LAY, and WOLLMAN,[1] Circuit Judges.
_____

WOLLMAN, Chief Judge.

Randall Neumann entered a conditional guilty plea to one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), reserving

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

the right to appeal the district court's[2] denial of his motion to suppress evidence seized during the search of his vehicle.  He now appeals, and we affirm.

## I.

On January 1, 1998, South Dakota highway patrol officer Mike Kayras was conducting stationary radar surveillance on Interstate 90 in Brule County, South Dakota, when he observed Neumann's pickup traveling west.  Kayras clocked Neumann's speed at eighty miles per hour, five miles per hour over the posted speed limit.  Kayras followed Neumann and then stopped him for speeding.

As Kayras approached Neumann's vehicle, he observed Neumann light a cigarette.  Kayras asked Neumann for his driver's license and vehicle registration. Neumann appeared nervous and anxious as he searched for the requested information. He eventually produced a valid Hawaii driver's license, although the pickup was registered in Montana.  Neumann explained that he formerly lived in Hawaii but had moved to Montana to pursue a career as a suntan lotion salesman.  He told the officer that he had left Minneapolis early in the morning and had been traveling all day.

Kayras asked Neumann to accompany him back to the patrol car while he prepared a warning ticket for speeding.  Once inside the patrol car, Kayras smelled a faint odor of alcohol on Neumann's breath.  Kayras asked Neumann how much he had had to drink.  Neumann responded that he had not been drinking at all.  Kayras then asked Neumann to take a portable breath test (PBT) to determine whether he had been drinking.  Neumann initially indicated that he did not want to take the test, whereupon Kayras told him that South Dakota law required him to take the test.  Neumann then recanted his earlier statement and admitted that he had drunk one beer about one hour

---

[2]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

before being stopped. Kayras administered the PBT, which registered a blood alcohol content of .013, indicating that Neumann had consumed alcohol but was not intoxicated.

Based on the results of the PBT and Neumann's inconsistent statements, Kayras searched Neumann's vehicle for an open container.[3] During the search, Kayras found one empty beer can and one unopened beer can. He also smelled burnt marijuana inside the pickup and noticed an ashtray containing marijuana ashes. When questioned about the odor and ashes, Neumann denied smoking marijuana. Kayras then told Neumann that he was going to search the pickup for drugs. At that point Neumann admitted that he had smoked marijuana and stated that a small bag on the passenger side of the pickup contained marijuana. Kayras located the bag of marijuana and then proceeded to search the entire vehicle. In the back of the pickup he found ninety-four pounds, thirteen ounces of marijuana.

Neumann was subsequently indicted by a federal grand jury for possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The district court denied Neumann's motion to suppress the evidence seized, adopting the magistrate judge's[4] proposed findings that the search of Neumann's vehicle did not violate the Fourth Amendment. Neumann thereafter entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. See Fed. R. Crim.

---

[3]S.D.C.L. § 35-1-9.1 provides:

It is a Class 2 misdemeanor for any person to have a package or any receptacle containing an alcoholic beverage in his possession in a motor vehicle unless the seal of the original package remains unbroken or the alcoholic beverage is so removed that no occupant of the motor vehicle shall have access to it while the vehicle is in motion.

[4]The Honorable Mark F. Marshall, United States Magistrate Judge for the District of South Dakota.

P. 11(a)(2). The district court sentenced Neumann to 24 months' imprisonment, followed by three years of supervised release, and imposed a $1,000 fine and a $100 assessment.

## II.

Neumann contends that the motion to suppress should have been granted because probable cause did not exist to justify the warrantless search of his pickup for an open container. We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated. See United States v. McManus, 70 F.3d 990, 992 (8th Cir. 1995).

Neumann does not contend that the initial stop of his vehicle was unconstitutional. "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator." United States v. Bell, 86 F.3d 820, 822 (8th Cir. 1996). Kayras had probable cause to stop Neumann for speeding because he was traveling five miles per hour over the posted speed limit. See United States v. Pipes, 125 F.3d 638, 640 (8th Cir. 1997). The detection of alcohol on Neumann's breath provided Kayras with a reasonable suspicion to further detain Neumann and expand the scope of the investigation. See United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995) (applying reasonable suspicion standard to support further detention and investigation); United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) (same); United States v. Bloomfield, 40 F.3d 910, 918 (8th Cir. 1994) (en banc) (same). The issue before us is whether Kayras could continue the encounter by searching Neumann's vehicle for an open container after he finished issuing the speeding ticket, for "[a] traffic violation alone will not justify an automobile search; there must be probable cause or consent." United States v. Martinez, 168 F.3d 1043, 1046 (8th Cir. 1999).

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997). Probable cause requires "'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" See Payne, 119 F.3d at 642 (quoting Illinois v. Gates, 462 U.S. 213, 243-44 n.13 (1983)).

We conclude that Kayras had probable cause to search Neumann's vehicle for an open container. Kayras had had seventeen years' experience with the highway patrol and significant training in the area of alcohol and drug detection. He testified that lighting a cigarette is usually done to mask an incriminating odor. Neumann appeared nervous and anxious and then positioned himself directly against the door while he was in the patrol car. Kayras suspected that Neumann had been drinking, and the PBT confirmed his suspicion. Neumann first denied drinking and then admitted to drinking one beer "in a town about 60 miles back." Based on this information, there was probable cause for Kayras to believe that Neumann had consumed beer while driving in his pickup and that there might well be an open container inside the vehicle.

Kayras's detection of the smell of burnt marijuana while he was conducting the search for an open container gave him probable cause to search the entire vehicle for drugs. See United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989). Accordingly, the district court did not err in denying the motion to suppress.

The judgment is affirmed.

LAY, Circuit Judge, dissenting.

Today our citizens have lost a little more freedom. The majority, unwittingly, completely obliterates the bright line that exists between mere suspicion and probable cause to search a vehicle. Justice O'Connor once wrote "[a] citizen does not surrender all the protections of the Fourth Amendment by entering an automobile." New York

v. Class, 475 U.S. 106, 112 (1986). Although we have evolved from the more rigid two-pronged standard relating to probable cause,[5] nevertheless, the Court has been quite specific in adhering to the difference between "particularized suspicion" to make an investigatory stop and probable cause to search a vehicle. Cf. United States v. Cortez, 449 U.S. 411 (1981), see also Alabama v. White, 496 U.S. 325 (1990) ("reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.") Under the so-called Terry stop, (Terry v. Ohio, 392 U.S. 1 (1968)), which the Supreme Court has recently indicated governs routine traffic stops, without a custodial arrest there can be no generalized search of a vehicle. Knowles v. Iowa, 119 S. Ct. 484 (1998).

The majority opinion relies upon Illinois v. Gates, 462 U.S. 213 (1983), which states that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. However, in utilizing such a definition it should be clear that the Court in no way intended to obliterate the line between mere suspicion and a substantial probability that criminal activity was afoot. In Gates, the Court was faced with the adequacy of a search warrant and emphasized that a reviewing magistrate's probable cause determination must be based upon "a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing. . . ." Gates, 462 U.S. at 236 (emphasis added) (citation omitted). Probable cause means probability, not merely a suspicion, that an officer might find contraband. Gates illustrated the difference in the standards citing Nathanson v. United States, 290 U.S. 41 (1933), a case which involved liquor shipped illegally into the United States. The Nathanson Court pointed out that where an officer simply

_____

[5]See Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969).

believes that "he has cause to suspect and does believe" that liquor will be found on certain premises, his belief is not sufficient to create probable cause for a warrant to issue. Gates, 462 U.S. at 239 (citing Nathanson, 290 U.S. at 44). As the Gates Court stated ,"[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in Nathanson failed to meet this requirement." Gates, 462 U.S. at 239.

It is clear that, if anything, the officer's search of Neumann's car was based on nothing more than an inchoate suspicion that the vehicle might contain an alcoholic container. Here, the officer did not see Neumann driving erratically but did clock him as driving five miles over the speed limit. Neumann was stopped and, as the officer approached the vehicle, he rolled down the window. He was asked for his driver's license and his registration. When the officer approached the vehicle, Neumann lit a cigarette (hardly a basis to cite as a factor for probable cause). While Neumann was trying to locate his driver's license and registration from his brief case, the officer was able to look around inside the vehicle for approximately two minutes. The officer observed nothing illegal at this time and did not smell any suspicious odor from within the vehicle. Thereafter, the officer asked Neumann to come back to his patrol car so that he could issue a warning ticket for the speeding violation. It is now well-settled that the officer's issuance of the traffic citation did not justify his search of the vehicle. See Knowles v. Iowa, 119 U.S. 484 (1998). Once in the patrol car, the officer smelled a "faint" odor of alcohol and asked Neumann if he had been drinking. Initially Neumann denied drinking, but later admitted having one beer approximately one hour earlier in Mitchell, South Dakota. The officer then requested that Neumann take a breathalyzer test, which indicated a low alcohol content level of .013. Admittedly there existed no basis to arrest Neumann for intoxication. Furthermore, the officer had looked inside Neumann's car earlier and had noticed that the seats were close to the floor board, which would make it impossible for any open cans or bottles containing alcohol to be on the floor. The officer also admitted that he never saw Neumann

attempt to conceal or hide anything from the time he was stopped until the time the officer decided to search the car.[6]

This case may seem somewhat insignificant to the average citizen; yet, it now stands as precedent that the Fourth Amendment is of little protection for a person's privacy while driving a vehicle.

I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]At oral argument the government relied a great deal upon the case of State v. Peterson, 407 N.W.2d 221, 223 (S.D. 1987) (a 3-2 opinion). There the officer wanted to search the vehicle to determine whether the defendant was carrying drugs. However, lacking probable cause to search for the drugs, the officer pulled the defendant over after he had driven recklessly on the highway. When he approached the defendant, the trooper noticed a strong smell of alcohol coming from within the vehicle. See 407 N.W.2d at 222. Before searching the vehicle, the trooper also observed empty beer cans in plain view on the floor of Peterson's vehicle. Notwithstanding the strong reliance placed upon the Peterson case in the government's brief and also at oral argument, the majority does not cite the Peterson case. The case clearly denotes articuable facts upon which probable cause to believe the vehicle contained an open container. In contrast to the present case, the officer did not see any open containers, did not smell alcohol coming from the car, and conducted the search only upon a hunch based upon the faint smell of alcohol on Neumann's breath.