**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. # 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that any additional pending motions in this action are **DENIED as moot**.

**UNITED STATES of America, Plaintiff,**

v.

**Kanisha RANDALL, Defendant.**

**No. 4:01CR3076.**

United States District Court, D. Nebraska.

Nov. 13, 2001.

J. Bruce Teichman, Omaha, NE, for Defendant.

Michelle J. Oldham, U.S. Attorney, Hall County Attorney, Grand Island, NE, for United States.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is before the court on Magistrate Judge Piester's report and recommendation (filing 17) that the defendant's motion to suppress (filing 12) be granted. No objections to the report and recommendation have been filed, as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have reviewed the Magistrate Judge's report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4 and find, after de novo review, that inasmuch as Judge Piester has fully, carefully, and correctly found the facts and applied the law, the report and recommendation should be adopted and the defendant's motion should be granted in all respects.

Accordingly,

IT IS ORDERED that:

(1) The Magistrate Judge's report and recommendation (filing 17) is adopted; and

(2) Defendant's motion to suppress (filing 12) is granted.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

The amended motion to suppress filed by defendant Kanisha Randall, filing 12, was heard on September 21, 2001. In this motion, the defendant seeks to suppress all evidence and statements arising from a June 27, 2001 traffic stop on Interstate 80 near Grand Island, Nebraska. The defendant claims that this traffic stop was pretextual, that there was no basis for reasonable suspicion or for probable cause to believe Ms. Randall was engaged in or had committed any crime, and that the officer's questioning during the traffic stop exceeded the scope permitted under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). She also claims that there was no valid consent given for any search of the vehicle she was driving.[1]

At about 2:30 p.m. on June 24, 2001, Trooper Robert Pelster of the Nebraska State Patrol was traveling westbound on Interstate 80 near Grand Island, Nebraska, when his radar indicated that the eastbound vehicle driven by Kanisha Randall was going 84 miles per hour. The speed limit at this location was 75 miles per hour. Trooper Pelster turned his vehicle, entered the eastbound lanes of the interstate and initiated a traffic stop of vehicle driven by the defendant, Kanisha Randall.

When the vehicle was stopped, Trooper Pelster approached the passenger side of the car and asked the defendant for her driver's license and registration. In response, she provided the officer with her license and a copy of a car rental agreement. Trooper Pelster noted that a Jerome Wilson had rented the vehicle and Kanisha Randall's name was not listed on the agreement as an authorized driver. He began a further inquiry about the defendant's authority or permission to drive

---

1. Although defendant's motion also seeks to suppress evidence found as a result of the search of her person, no evidence has been adduced regarding this alleged search. Further, the motion to suppress claims a violation of defendant's rights under the 4th, 5th, and 6th Amendments. The evidence and arguments adduced during the hearing on this motion focused on the alleged illegality of the traffic stop, questioning of defendant during that stop, and search of defendant's vehicle.

While evidence was received regarding defendant's subsequent statement to Investigator Kolb, defendant's counsel has clarified that Ms. Randall is arguing for suppression of this statement solely because it allegedly resulted from the unlawful stop and search of her vehicle and is therefore fruit of the poisonous tree. I have therefore interpreted this motion to be limited to alleged Fourth Amendment violations.

the vehicle but due to the noise of the moving traffic on the interstate, Trooper Pelster was having difficulty communicating with the defendant while standing on the roadway. He therefore asked Ms. Randall to exit her vehicle and sit in his patrol car while he completed this stop and investigation. She complied with this request.

While in the vehicle, Trooper Pelster asked the defendant questions concerning where she was coming from, where she was going, the purpose of the trip, how she had obtained this vehicle for her cross country travel from Los Angelos to Minnesota and whether she had permission from anyone at the rental car company to drive this car. The questioning and responses, all of which were audible on videotape, occurred while Trooper Pelster was awaiting radio responses concerning the status of defendant's drivers license and confirmation that the car was not stolen. In the conversation, the defendant claimed that Jerome Wilson, the owner of a pager company, had rented the car from somewhere in the Los Angelos area and she had picked it up from him. Although she stated she was heading to Minnesota on business for the communications company, that company was also not listed on the rental agreement. She then claimed her profession was construction, that she was traveling to do a framing job for Mr. Wilson in Minnesota, and that she drove because she hates to fly. However, she stated that Mr. Wilson was now in Minnesota, her stay in Minnesota was scheduled to last only two days, that she would fly back to Los Angelos, and she had no tools with her to perform any construction project.

When he received confirmation that the drivers license was valid and the car was not reported as stolen, Trooper Pelster advised the defendant that he would let her proceed even though her name did not appear on the rental agreement and that he would give her a warning ticket for speeding. He handed the defendant her driver's license, the car rental agreement and a warning ticket and told her she was "free to go." He then asked her if she had a few seconds for a couple of questions. She hesitated and explained that she was already behind by a couple of hours because the hotel in Sidney, Nebraska had not provided the requested wake up call. Trooper Pelster asked again if she would respond to his questions and as she hesitated, he reminded her several times that he was requesting only a few seconds of her time. Ultimately she stated, "A few seconds? I guess. What choice do I have?" Trooper Pelster did not answer that question and proceeded to ask the defendant if she had a weapon or any drugs. Although Trooper Pelster testified that Ms. Randall was hesitant when asked if she had cocaine in her possession, the videotape of this incident reveals that she did not hesitate in responding to any question and readily denied possession of any gun or drug.

Trooper Pelster and the defendant exited the trooper's vehicle. He then asked for consent to search her car. She clearly hesitated but then said, "I guess. I mean, I guess." Trooper Pelster immediately directed the defendant to stand near the front right bumper of the patrol car as he proceeded to retrieve the vehicle keys from the ignition of the rental car. He tried to locate the lock under the center medallion of the trunk but when the medallion did not turn, he immediately moved to the right lower corner of the trunk hood and located the trunk lock. Simultaneously, the defendant gestured and spoke to advise Trooper Pelster of the location of the trunk lock.

Inside the trunk, Trooper Pelster located cocaine (which he originally identified

as marijuana) under the trunk carpet. He placed the defendant under arrest, hand cuffed her and she waited in the patrol car while he further searched the vehicle and secured the evidence.

The defendant was transported to Grand Island. At the Grand Island State Patrol office, Investigator Steven Kolb advised the defendant verbally and in writing of her rights under *Miranda*. The defendant signed a written waiver of those rights and provided a statement to Investigator Kolb.

 The defendant claims that any evidence, including this statement, which arose from this traffic stop, and the questioning and search of her vehicle during that stop, must be excluded. Under *Terry*, the issue of whether an investigatory detention or traffic stop complies with the Fourth Amendment depends upon two factors—whether the stop was justified at its inception, and whether the officer's actions during the stop were reasonably related in scope to the circumstances that justified the interference in the first place. *U.S. v. Navarrete–Barron*, 192 F.3d 786, 790 (8th Cir.1999); *United States. v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994). An investigatory, or *Terry*, stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. When justifying a particular stop, police officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *U.S. v. Navarrete–Barron*, 192 F.3d at 790.

A traffic violation, however minor, creates probable cause to stop the driver of a vehicle. *United States v. Neumann*, 183 F.3d 753, 755 (8th Cir.1999); *United States v. Caldwell*, 97 F.3d 1063, 1067 (8th Cir. 1996); *United States v. Pereira–Munoz*, 59 F.3d 788, 791 (8th Cir.1995). Although a traffic stop cannot be pretextual, "[i]f the officer is legally authorized to stop the driver, any additional 'underlying intent or motivation' does not invalidate the stop." *United States v. Poulack*, 82 F.Supp.2d 1024, 1030 (D.C.Neb.1999) (citing *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir.1994)). See also, *Whren v. United States*, 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Caldwell*, 97 F.3d at 1067; *United States v. Bell*, 86 F.3d 820, 822 (8th Cir.1996).

 The defendant has claimed that this traffic stop was pretextual. However, Trooper Pelster had probable cause to stop the defendant for speeding because she was traveling nine miles per hour over the posted speed limit. His underlying motive for the stop, if any, is therefore irrelevant. A law enforcement officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver. *U.S. v. Neumann*, 183 F.3d at 755; *U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 646 (8th Cir.1999). When the officer observes a vehicle traveling in excess of the permitted highway speed set by law, the automobile or its occupants can be lawfully stopped and the driver asked to accompany the officer to the patrol car, even if the officer is planning to issue only a warning ticket. *U.S. v. Neumann*, 183 F.3d 753 at. "A valid traffic stop may not be challenged on the ground that it was a pretext for other investigation." *U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d at 646. (citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 1772–74, 135 L.Ed.2d 89 (1996)).

Trooper Pelster elected to give the defendant a warning ticket and asked the defendant to wait in the police cruiser while the officer radioed in the defendant's license and vehicle information and awaited the response. The defendant claims the conversation that took place during this wait was intrusive, beyond the scope

of the traffic stop, and violated her Fourth Amendment rights.

■ "[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). After making a valid traffic stop, an officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the write up of any citation or warning. *U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d at 647. During this time, the officer may ask the motorist routine questions concerning her destination, the purpose of the trip, or whether the motorist will consent to a search of the vehicle, and the officer may act on whatever information is volunteered. *Id.* (See also, *United States. v. Ramos*, 42 F.3d at 1163; *United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993); *United States v. Richards*, 967 F.2d 1189, 1192–93 (8th Cir.1992)). If reasonably related questions result in answers that are inconsistent with known facts, a trooper's suspicions may be sufficiently raised to justify expanding the scope of the stop and asking additional, more intrusive, questions. *Id.*

■ Trooper Pelster's questioning of the defendant did not exceed an inquiry reasonably related to this traffic stop. The officer asked questions concerning the route and purpose of defendant's travel, a permissible line of inquiry under *Ramos*. Moreover, the car rental agreement provided to Trooper Pelster did not list the defendant's name as an permitted driver.

This information raised significant issues concerning the defendant's authority to operate this rental car. Trooper Pelster was justified in asking additional and more expansive questions to determine whether this defendant's possession and operation of the vehicle was lawful. He did not go beyond the constitutionally permissible scope of questioning under *Terry*.

Finally, the defendant's answers were not wholly consistent and raised significant questions about the veracity of her explanation for taking the trip, what she intended to do at the destination, her mode of travel and how she acquired access to the car. Initially she explained that she was on a company trip for the pager communications company. Then she explained that, even without any tools and having yet to review the blueprints, she was destined for Minnesota to perform a two-day construction job of framing a building. She had received the rental car from Jerome Wilson on the previous Sunday in Los Angelos, but he was meeting her in Minnesota when she arrived. She had driven because she hated to fly, but she was flying back home. The suspicion validly raised by the conflict in defendant's statements and the facts known and observed by the officer justified further inquiry. *U.S. v. Carrate*, 122 F.3d 666, 668–9 (8th Cir.1997) (suspicion of drug transport and further questioning justified where defendant was not owner of the vehicle, was in route from California (a source state) to Illinois, had little clothing in the car to suggest a legitimate trip, the six-year-old car had high mileage, and defendant had a prior criminal record).

■ After making a valid *Terry* stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time. *United States v. Bell*, 183 F.3d 746, 749 (8th Cir.1999). An investigative stop may last only so long as is neces-

sary to conduct a reasonable investigation. *Eubanks v. Lawson,* 122 F.3d 639, 641 (8th Cir.1997) (citing *United States v. Willis,* 967 F.2d 1220, 1224 (8th Cir.1992)).

 Trooper Pelster's stop of this defendant was not excessive in time. In a period of twenty minutes, the officer stopped the vehicle, radioed in the vehicle and driver's licenses and received responses, wrote out the warning ticket, and performed the search of the vehicle that led to the defendant's arrest. Ms. Randall was informed that she was "free to go" seventeen minutes after the stop and shortly after the computer check on the license was complete and the warning ticket was drafted. When questioning takes place while an officer waits for the results of a computer check, the questioning has not caused the duration of the stop to be extended in violation of *Terry,* since the delay would have occurred even without any questioning. *Crain,* 33 F.3d at 485. An officer's investigation based on reasonable suspicion or probable cause necessitates detaining the suspect while obtaining identification, asking appropriate questions and running a computer check of the name and information provided to assure there are no outstanding warrants for defendant's arrest, the validity of defendant's license and, in this case, whether the car is stolen. Detaining the defendant for the period of time required to perform this investigation did not violate her Fourth Amendment rights. *United States v. Tuley,* 161 F.3d 513, 515 (8th Cir.1999) (twenty minute investigatory stop to identify defendant, his reason for being at a closed gas station and running check to verify an outstanding warrant complied with *Terry's* mandate to stay within the scope of the circumstances justifying the initial stop.)

 Even if the traffic stop and the officer's questioning had exceeded the constitutional parameters set forth in *Terry,* a valid consent by the defendant for the search of her vehicle may be sufficient to "purge the primary taint." *United States v. Thomas,* 83 F.3d 259, 260–61 (8th Cir. 1996) (quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)). "[A]n illegal detention is only the start, and not the end, of the Fourth Amendment analysis." *Id.* Under circumstances where detention of the defendant is illegal, a court must still decide if the defendant's consent to search the vehicle was nevertheless freely and voluntarily given. *Id.* The causal chain between an illegal arrest and evidence discovered afterwards can be broken by sufficient acts of free will in consenting to a search by law enforcement. *Ramos,* 42 F.3d at 1164.

 After the defendant had been given her driver's license, rental contract and warning ticket, Trooper Pelster advised her that she was "free to go." He then immediately asked her if she would answer a few questions concerning possession of any guns or drugs. Instead of immediately consenting, she hesitated and explained that she was behind schedule, *indicating* that she wanted to leave. Trooper Pelster continued to request a "few seconds" of her time. She acceded to this request, stating "What choice do I have." Having already answered all the officer's questions by denying possession of any drug or weapon, she was then asked to consent to the search of her vehicle. Again Ms. Randall hesitated and, rather than saying "yes" as testified to by Trooper Pelster, her response was actually a puzzled, "I guess. I mean, I guess." Trooper Pelster did not clarify the meaning of this response and did not warn her that she could say "no," but directed her to stand in front of the patrol car while he searched the vehicle. In that search, he located cocaine and as a result of that search, the defen-

dant was arrested and her statement taken by Investigator Kolb. The Defendant claims that the consent was not valid and the search of the vehicle violated her Fourth Amendment rights.

■ Consent to a search must be proven by clear and positive testimony and must be unequivocal, specific, intelligently and voluntarily given. *United States v. West*, 219 F.3d 1171, 1177 (10th Cir.2000) *United States v. Glover*, 104 F.3d 1570, 1583–84 (10th Cir.1997); *United States v. Williams*, 754 F.2d 672, 674–5 (6th Cir. 1985). The precise question is not whether Ms. Randall consented subjectively, nor whether Trooper Pelster actually believed she consented, but rather whether a reasonable person under the circumstances would believe that she provided a valid consent. *United States v. Jones*, 254 F.3d 692, 695 (8th Cir.2001); *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir.1998). (See also, *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)). The Government has the burden of proving by a preponderance of the evidence that Ms. Randall actually consented to the search of the vehicle or that Trooper Pelster's belief that she did was reasonable. *Id.; United States v. Miller*, 20 F.3d 926, 930 (8th Cir.1994). (See also, *United States v. West*, 219 F.3d at 1177; *United States v. Cooper*, 43 F.3d 140, 144 (5th Cir.1995).)

The defendant's expression of consent can be inferred from the defendant's words, gestures, and other conduct. *United States v. Jones*, 254 F.3d at 695. The demeanor of the defendant when speaking with law enforcement is a factor to consider in assessing the meaning of the defendant's words and the voluntary nature of any consent given. (*United States v. Gleason*, 25 F.3d 605 (8th Cir.1994)) After being told she was "free to go," Ms. Randall was asked to respond to additional questions from the officer. Her significant hesitation and implicit objection to further contact with the officer were evident in the videotape and her statement, "What choice do I have?" Rather than advising the defendant that she could choose not to answer any questions and remained "free to go," the questioning by Trooper Pelster began. The defendant's responses did not, in any way, raise reasonable suspicion or probable cause to believe that defendant was involved in criminal activity and the officer did not testify concerning any basis for searching the car other than his belief that she had consented to the search.

The defendant did not affirmatively state that she was consenting to a search of her vehicle. She responded to the trooper's request for consent by saying, "I guess. I mean, I guess." It is the government's burden to prove that these words uttered in the circumstances surrounding this traffic stop establish "an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir.1999) (a reasonable police officer would not have believed that defendant's statement "You've got the badge, I guess you can" was a clear, unequivocal and valid consent to search).

I find that the government has not met its burden in proving that the defendant expressed, either through words, gestures or actions, her consent to the officer's search of her vehicle. I further find that any expression of consent provided, if any, resulted from the defendant acquiescing to the authority of the officer and her belief that she had no choice but to cooperate.

■ The voluntariness of a consent is a question of fact to be determined from a totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct.

2041, 2048, 36 L.Ed.2d 854 (1973). In assessing these facts, the characteristics of Ms. Randall may be relevant, including her age, general intelligence and education, whether she was intoxicated or under the influence of drugs when consenting, whether she consented after being informed of her right to withhold consent and whether, because of previous arrests, she was aware of the protections afforded to suspected criminals by the legal system. In addition, the characteristics of the environment in which her consent was given are considered, including whether Ms. Randall was detained and questioned for a long or short time, was threatened, physically intimidated, or punished by the police, relied upon promises or misrepresentations made by the police, was in custody or under arrest when the consent was given, was in a public or a secluded place, or either objected to the search or stood by silently while the search occurred. These factors are not applied mechanically, and no single factor is dispositive or controlling. *United States v. Bradley*, 234 F.3d 363, 366 (8th Cir.2001).

Having observed Ms. Randall's testimony and appearance as a witness, as well as the videotape of this traffic stop, I find that Ms. Randall was acceding to the authority of Trooper Pelster rather than voluntarily consenting to the search. Trooper Pelster's request for cooperation in questioning and in obtaining consent to the search of the vehicle was cajoling, misleading and at times demanding, and did not result in a voluntary consent to the vehicle search. Ms. Randall was noticeably reluctant to answer questions or consent to the search stating, "What choice do I have?" and ultimately acceding to the search with the words, "I guess" as if the search was inevitable with or without her consent. Although the officer was not required to warn her that she need not consent to further questioning or the vehicle search,

(*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)), the lack of a warning is a factor to consider in assessing the validity of the alleged consent. This is especially true when the defendant clearly indicates that she believes she has no choice but to agree to the officer's further questioning and search.

After hearing the words, "I guess" in response to his request for consent, Trooper Pelster, without even hesitating, immediately directed the defendant where to stand. In doing so, he did not yell or raise his voice, but did speak in an authoritarian, assertive voice, which was clearly asserting control over the defendant, and explicitly indicating that she was no longer "free to go." Although this event occurred on a public highway, and it is true that Ms. Randall did not object to the search and also that she stood by silently while it occurred, by that time the officer had ordered her where to stand and had already taken her keys from the ignition. I conclude that a reasonable person in the officer's position would believe that Ms. Randall was not choosing to cooperate but was instead following the trooper's orders. Under the totality of the circumstances, Ms. Randall neither expressed a consent to the search nor was any expression given by her words or actions the result of her voluntary choice to cooperate with the police.

I therefore find that Trooper Pelster's search of the vehicle was not consensual and violated the defendant's rights under the Fourth Amendment. In a criminal action against defendant Kanisha Randall, admission of any of the evidence or statements obtained as a result of this search and seizure would violate the defendant's Fourth Amendment rights.

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G.

Kopf, United States Chief District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the defendant's motion to suppress be granted in all respects.

The parties are notified that failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

Dated October 24, 2001.