# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3793

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　　District Court for the Western
　　　　　　　　　　　　　　　　　*　　District of Missouri.
Donald William Parker,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted: April 12, 2005
Filed: June 28, 2005

_____

Before LOKEN, Chief Judge, WOLLMAN, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Donald Parker pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In that plea agreement he reserved his right to appeal the district court's[1] denial of his motion to suppress the firearms seized during the search of his residence. This appeal followed and we affirm.

_____

[1]The Honorable Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri, adopting the report and recommendation of The Honorable James C. England, Magistrate Judge, United States District Court for the Western District of Missouri.

## I.    BACKGROUND

On September 23, 2003, local police officers went to Parker's mobile home in Sheldon, Missouri, looking for a federal fugitive. Parker gave Sheriff Peckman permission to enter. Peckman searched the mobile home and did not find the man they were looking for. ATF Agent Fridley also entered the mobile home shortly after Peckman, testifying at the suppression hearing that he first asked Parker's girlfriend if he could enter. Upon entering, Agent Fridley observed boxes of ammunition in plain view on a shelf. Fridley testified that at that point, he became concerned for his safety and the safety of the other officers because they were searching for a fugitive who had pled guilty to federal firearms violations. Fridley continued the search for the fugitive, lifting up the mattress to the bed because "[b]ased on [his] experience of beds in trailers, especially in the kitchen area, sometimes they're just a mattress over a frame, a wood frame, that's covering a storage area, a possible hiding place." Fridley found a gun under the mattress. Ultimately, Parker informed the officers of his prior convictions and that there were, in fact, two more guns in the mobile home, and he told the officers where they were.

Parker's suppression motion was based, in part, on his alleged withdrawal of consent. Parker claims that he gave consent to search for the fugitive and nothing more. Parker further claims that at the time Fridley entered the mobile home and began searching, Parker was outside asking a third officer if they had a search warrant. Parker's girlfriend, on the other hand, testified that she heard Parker question the officers about the warrant while they were in the trailer. The officers testified that Parker never instructed them to stop searching or asked for a warrant. In fact, the officers testified that Parker facilitated the weapons search by telling the officers where the guns were.

The district court, adopting the recommendation of the magistrate judge, denied Parker's motion to suppress, and Parker reserved his right to appeal that decision in

his plea agreement. The district court sentenced Parker to thirty months' imprisonment. On appeal, Parker raises a Fourth Amendment claim in addition to Blakely sentencing claims.

## II.    DISCUSSION

### A.    Fourth Amendment

Parker claims that although he initially gave his consent to the officers to enter the trailer to look for the fugitive, he withdrew his consent before the officers found the guns. And Parker claims that in any event, the weapons search exceeded the scope of his consent. "We examine the factual findings underlying the district court's denial of a motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999).

Parker and his girlfriend gave conflicting testimony at the suppression hearing about where Parker was when he allegedly revoked his consent by asking the officers for a search warrant. The district court rejected Parker's withdrawal-of-consent claim because Parker and his girlfriend's credibility had been severely undermined and the officers testified that they never heard Parker say anything about a warrant while they were searching. Peckman testified that the first time he heard Parker ask if they had a warrant was after the guns were retrieved, they were outside, and Parker was under arrest. The court concluded that "the credible testimony, taken as a whole, suggests that [Parker] did not object to the officers searching for more weapons, but rather, he facilitated the search."

Parker's own testimony supports the court's conclusion. Parker told the officers where the additional weapons were located. Such assistance does not usually come from someone who has unequivocally withdrawn his consent to search. A defendant

must make an unequivocal act or statement to indicate that consent is being withdrawn. United States v. Ross, 263 F.3d 844, 846 (8th Cir. 2001). There is no evidence of an unequivocal withdrawal here and we have little latitude to review the court's credibility determination. United States v. Walsh, 299 F.3d 729, 735 (8th Cir. 2002). Based on our review of the record we find no error.

Parker further argues that there was no justification for expanding the search because the incriminating nature of the ammunition was not immediately apparent to these officers, who did not know Parker was a felon. Thus, he claims there was no justification for the expansion of their search. However, the search under the mattress was not an "expansion" nor was it based on any determination that the ammunition in plain view was incriminating. Given Fridley's concern for everyone's safety, his search was reasonable. Fridley was searching under the mattress for the fugitive, known to be a convicted felon in possession of weapons, and only incidentally discovered the first gun. The district court did not err in crediting Fridley's testimony on this issue. Accordingly, there was no Fourth Amendment violation here.

B.    Sentencing Issues

Although the district court applied the then-mandatory guidelines when it sentenced Parker, which we now know was error, we do not have a Booker issue to address. United States v. Booker, 125 S. Ct. 738, 756 (2005). Parker expressly waived his right to appeal the constitutionality of the guidelines in his plea agreement, admitted to the conviction at the time of his plea, and stipulated to the guidelines' calculations used by the district court. Paragraph eight of Parker's plea agreement states that "[t]he defendant agrees not to appeal or otherwise challenge the constitutionality or legality of the Sentencing Guidelines" and "[t]he defendant understands and acknowledges that his sentence will be determined and imposed pursuant to those Sentencing Guidelines."

Valid waivers of appellate rights are generally enforceable and must be entered into knowingly and voluntarily.  United States v. Andis, 333 F.3d 886, 889-90 (8th Cir.), cert. denied, 540 U.S. 997 (2003).  The right to appellate relief under Booker is among the rights waived by a valid appeal waiver.  United States v. Reeves, No. 04-2356, 2005 WL 1366432, at *2 (8th Cir. June 10, 2005); United States v. Burns, No. 04-4115, 2005 WL 1366430, at *2 (8th Cir. June 10, 2005).  Nothing before us gives us pause to question the validity of this waiver.  Parker does not dispute that he entered into the plea agreement and waiver knowingly and voluntarily.  Accordingly, Parker's challenge to the constitutionality of the guidelines is foreclosed.

## III.   CONCLUSION

For the reasons stated herein, we affirm.

_____